**HANNIBAL SALES COMPANY,**
**Plaintiff-Respondent,**

v.

**J. W. SOLTER, Defendant-Appellant.**

**No. 37791.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

May 17, 1977.

J. Patrick Wheeler, Canton, for defendant-appellant.

Wasinger & Parham, Marion F. Wasinger, Hannibal, for plaintiff-respondent.

GUNN, Judge.

Defendant-appellant[1] was sued by plaintiff-respondent for the price of ten cows purchased by defendant at a cattle auction. Defendant counterclaimed for actual and punitive damages. The jury returned a verdict in favor of plaintiff against defendant for $4,961.70 in damages and interest. On appeal, defendant's counsel in the best tradition of a lawyer fighting for his client with earnest zeal has raised a multitude of alleged points of error, and we consider those which have been preserved for our review.[2]

Defendant attended a public auction conducted by the plaintiff auction company. He paid $4,470.00 for ten pregnant cows offered for sale at the auction and had the cows delivered to his farm. However, shortly after the sale, defendant stopped payment on his check, and plaintiff sued defendant for payment of the cows plus punitive damages, alleging a conspiracy to inveigle plaintiff from his property. Defendant counterclaimed charging he had been fraudulently induced to purchase the cows; that the ages of some of the cows had been understated; and that while the cows did calve, they did so later than had been represented at the sale. Jury verdict was for plaintiff on the bid price of the cows, plus interest.

During the course of the two day trial, there was all kinds of interesting testimony on how the age of a cow can be determined by looking in its mouth (mouthing); also, that a young cow can lose its teeth in a variety of ways, thus becoming a broken mouthed cow; that as a cow has no upper teeth it must use its tongue to pull on the grass it eats. The transcript also vividly portrays that in the fray of this hard fought courtroom battle, tempers became frayed. We note, however, that the trial judge was remarkably halcyon throughout the storm of trial. And throughout the trial and this appeal strong undertones of sweet Rose, the barren bovine of Aberlone,[3] have bawled forth.

█ Defendant's first point of error relates to the trial court's exclusion of two registration certificates for the cows purchased. At the auction, plaintiff's auctioneer, reading from a card furnished him by an employee in the sale barn, announced that within the ten cow group ultimately purchased by defendant, four cows were five years old, four cows were six years old, one was seven and one was eight. Defendant bought the cows and took them home. He subsequently had the cows mouthed to determine their ages and found that while

---

1. Suit was initially brought against defendant and his wife, but plaintiff subsequently dismissed its action against defendant's wife.

2. For instance, we do not consider defendant's objection to instructions on this appeal where there was no trial objection nor where there was no reference to such instructions in the motion for new trial. *Cole v. Evans,* 546 S.W.2d 748 (Mo.App.1977). Neither do we consider points raised on appeal which are unsupported by citations of authority. *McMillin v. Sears, Roebuck & Co.,* 523 S.W.2d 111 (Mo. App.1975).

3. Brainerd Currie, "Rose of Aberlone," Student L.J. (April, 1965).

five of them were of the ages stated at the auction, and therefore acceptable, four were older than had been represented, and one was broken mouthed. To substantiate his testimony regarding the cows' ages, defendant sought to introduce certificates of registration on three of the cows showing the ages of two to be nine years and the age of one to be ten years. Plaintiff objected to the introduction of the certificates and testimony regarding the certificates on the ground that in discovery proceedings defendant failed to supply the certificates upon plaintiff's request. The court sustained plaintiff's objection, and refused to accept the certificates in evidence. Plaintiff's interrogatory to defendant asked:

"Attach copies of all registration papers on any cattle that you own to the answers to these interrogatories."

Defendant's response to the request was: "None."

We believe that the interrogatory was sufficiently definite to place defendant on notice that plaintiff was seeking the certificates of registration on the cattle which were the subject of the litigation and which could be important to plaintiff in the preparation of its case. Clearly, defendant had the continuing obligation to supply plaintiff with the information requested in the interrogatory relating to the certificates of registration. *Laws v. City of Wellston*, 435 S.W.2d 370 (Mo.1968); *Skelton v. General Candy Co.*, 539 S.W.2d 605 (Mo.App.1976); *Will v. Carondelet Savings & Loan Association*, 508 S.W.2d 711 (Mo.App.1974). The issue, then, is whether the trial court abused its discretion in rejecting defendant's attempts to place the certificates in evidence, for, as stated in *Aulgur v. Zylich*, 390 S.W.2d 553 (Mo.App.1965), l.c. 556:

"It is well established that the trial court has a broad discretion to choose a course of action during trial when evidence is challenged on the ground it has not been disclosed by answers to interrogatories. In the sound exercise of that discretion, the trial court may admit or reject such

evidence, or otherwise determine and impose appropriate sanctions for violations of rules governing interrogatories."

*Hilmer v. Hezel*, 492 S.W.2d 395 (Mo.App. 1973), is also appropriate. Inasmuch as defendant did possess the certificates of registration, and the information contained in the certificates did refer to a controverted issue, we find no abuse of discretion by the trial court in rejecting their use. We also observe that plaintiff through other means did place before the jury evidence as to the various ages of the cattle.

Defendant entreats us to find that Rules 56.01 and 57.01 and the cases supporting those rules require supplementation of answers to interrogatories only as to witnesses. But the rules are not so limiting. Rule 56.01(e)(2) requires amendment to any prior responses under the (e)(2) conditions, and is not restricted to witnesses only. See *Hilmer v. Hezel*, supra.

■ Defendant's second point relates to his income tax records requested under subpoena. Defendant was compelled to produce his joint income tax records under a protective order. Although the tax records were not used, and the record is destitute of any indication that the jury was aware of their presence, defendant complains bitterly that the requirement to produce such records was a facinorous incursion into his right of privacy. We must rule against defendant on this point. At the time the protection order was given, the action for punitive damages against defendant and his wife was pending. It has been held that evidence of a defendant's financial worth through income tax records is admissable in an action seeking punitive damages. *State ex rel. Kubatzky v. Holt*, 483 S.W.2d 799 (Mo.App.1972). Here, defendant claims that the action of plaintiff to obtain the tax records was an oppressive harassment. However, the records, although given to the plaintiff, were never used nor shown to the jury, nor was the jury aware of their existence,[4] accordingly, there could not be any

4. The defendant suggests that the jury could have seen the records on counsel's table, but we believe that it is too speculative to suggest

that the jury would have been aware of what the records were or what they contained.

prejudice to defendant with the jury. If, as defendant assiduously argues, the fact that the records had to be made available in this case amounted to undue hardship or oppressiveness, it would appear that an attack on the production of such records could be better made in a prohibition action. See *State ex rel. Kubatzky v. Holt*, supra.

■ Defendant also charges that the trial court erred in failing to properly instruct and admonish plaintiff's counsel for his consistent use of leading and suggestive questions. Throughout the trial, the interruptions, objections and comments by both counsel were fulsome and undulating, evoking retaliatory riposte by the other. Frequently, the proceedings passed from reasonable dialectic to a display of asperity, with each counsel, on occasion slipping into the banality of flinging an invective or two. But we note that in our reading of all 472 pages of transcript, each time that defendant objected to the use of leading and suggestive questions by plaintiff's counsel, the objection was sustained and plaintiff's counsel admonished by the trial judge. No mistrial was requested, so the defendant's counsel received all the relief requested and was not prejudiced. *Burian v. Dickens*, 527 S.W.2d 26 (Mo.App.1975).

■ Finally, of the points preserved for appeal, defendant claims that the trial court failed to submit the proper verdict forms for the jury. Defendant contends that there was no verdict form submitted which would have allowed a finding for defendant on plaintiff's claim and for the plaintiff on defendant's counterclaim. The record does not contain the verdict forms submitted except for plaintiff's verdict form which the jury rendered, finding "the issue in favor of the plaintiff and assess its damages at $4,470.00 and assess interest at $491.70, being a total sum of $4,961.70."

From the record, we know that defendant tendered the trial court two forms that were combined by the trial court and given to the jury. In discussing the verdict forms with both counsel, the trial judge stated that he was giving the plaintiff's suggested verdict form and the combined forms of verdict for the defendant, "so the jury in one verdict may make a finding for Plaintiff on its cause of actions and for Defendant on the counterclaims." Defendant's counsel protested "that there ought to be a verdict available to the jury for a finding against all the parties because it is possible that they could find the cattle had no value." The trial judge specifically found as a matter of law that the cattle had value and refused further verdict forms other than those tendered to the court by plaintiff and defendant.

We are hampered in our consideration on this point inasmuch as only one form of verdict has been supplied for our review. See *State v. Laws*, 547 S.W.2d 162 (Mo.App. 1977); *Davis v. Long*, 521 S.W.2d 7 (Mo. App.1975). But in any event, the trial court was correct in finding as a matter of law that the cattle that defendant purchased had value. The defendant specifically testified that the cows each had a value of $200–208 and that at one point he had offered to pay $3,700 for them. Therefore, the trial judge was correct in rejecting defendant's request for a verdict form which would allow the jury to find that the cattle had no value, for such finding would not comport with the evidence.

We finally come to the end of this hard fought case in which neither side would bend. The courtroom action was considerably less tranquil than the meadows of contentment where defendant's cows expatiate and chew their cuds.

As one could reasonably expect,
the Rose of Aberlone must resurrect.
So we believe it befitting from the Rose
    of Aberlone to quote,
that which Professor Currie felicitously
    wrote:
"The briefs are in, the case submitted.
The lawyers on both sides acquitted
Themselves with nice distinction, just
As earnest counsel ever must
In fealty to their sacred trust.
Their arguments had an intensity

Befitting the issue's immensity;
And now they linger with cooling zeal
To learn the upshot of [this] appeal." [5]
But whereas with the Rose, the judgment
was reversed;
Here we are compelled to do the converse.
Though hard and long the defendant has
travailed,
Alas for him, his cause has failed.

Judgment affirmed.

KELLY, P. J., and WEIER, J., concur.

5. Brainerd Currie, Rose of Aberlone, supra.