**Robert F. COOPER, et ux., Plaintiffs-Respondents,**

v.

**GENERAL STANDARD, INC. and Raymond Hawk, Defendants-Appellants.**

No. WD 34071.

Missouri Court of Appeals, Western District.

May 22, 1984.

As Modified July 31, 1984.

Application to Transfer Denied Sept. 11, 1984.

Clyde G. Meise, Meise, Cope, Coen & McIntosh, Kansas City, for defendants-appellants.

Lantz Welch, G. Spencer Miller, Miller & Dougherty, Kansas City, for plaintiffs-respondents.

Before TURNAGE, C.J., KENNEDY, J., and SWOFFORD, Sr. J.

TURNAGE, Chief Judge.

Robert Cooper and his wife, Ruth, filed suit to recover damages from General Standard, Inc. and its employee, Raymond Hawk resulting from an automobile collision. Hawk filed a counterclaim for injuries he sustained. The court entered judgment on the jury verdict awarding Robert $300,000 and Ruth $100,000 against General and Hawk. The court entered judgment for Robert on the verdict in his favor on Hawk's counterclaim.

General and Hawk contend that the court erred in regard to a number of instructions and evidentiary rulings. Affirmed.

About 7:30 a.m. on September 29, 1978, Robert was driving east on 23rd Street in Independence in his automobile. Twenty-Third Street is a four lane street divided by a solid concrete median of some width constructed to curb height. At the same time and place Hawk was operating a van owned by General in a west-bound direction on 23rd Street. The van went up on to the

median and entered the east bound lanes where it collided head on with Robert's car.

There was no dispute that the van was owned by General and that Hawk was employed by General to install liquor displays. There was no dispute that on September 27 Hawk had driven the van, with permission, to the airport to fly to New Orleans to attend a seminar for display people. He returned to the airport about midnight on September 28, picked up the van, and drove to his home in Independence. He arose about 6:30 a.m. on September 29 and was driving the van toward General's office at the time of the accident.

The evidence would allow the jury to find that Robert sustained numerous injuries, the most serious of which was to his neck. As a result of his injuries, Robert underwent two surgeries for a spinal fusion in his neck. After surgery he was in considerable pain and required extensive treatment. There was expert testimony that his pain is real and intractable and that it is of a permanent nature. Robert spent 40 days in the hospital and was unable to return to his work as a crane operator for one year after the accident. When he did return to work he found he was not able to perform the duties of crane operator and was required to accept reclassification as an oiler. This meant a reduction in pay and seniority.

Ruth testified that she spent several days around the clock at the hospital with Robert after the accident. She testified that Robert had undergone a personality change and that he was in constant pain. She stated that it had been necessary for her to go back to work because of Robert's reduced earnings. She said that because of Robert's condition she had to do considerably more driving after the accident than before. She said the accident had wrecked the couple's conjugal relations.

Hawk testified that he was driving down 23rd Street when a car cut in front of him causing him to swerve and strike his head. He said that he passed out and had no recollection of the accident. Hawk filed a counterclaim against Robert for his injuries arising from the accident.

■ General first contends that there was no evidence to support a finding that Hawk was acting within the scope of his employment at the time of the accident. General's position is that Hawk was simply driving to work and, thus, was not acting in the course of his employment so as to subject General to liability. It is true that an employee is not engaged in work when he uses his employer's automobile in going to and from his place of employment. *Beckwith v. Standard Oil Company*, 281 S.W.2d 852, 855[1] (Mo.1955). However, the evidence in this case shows that Hawk was doing more than simply driving the van to work. It is conceded that Hawk had driven the van to the airport to go to New Orleans on business, and that he had permission to leave the van at the airport and to drive it back to the office of General when he returned. It is also conceded that Hawk did not arrive in Kansas City from New Orleans until midnight on September 28 and that he went home for a few hours sleep before returning to the office the next morning.

The facts in this case are similar to those in *Gilborges v. Wallace*, 78 N.J. 342, 396 A.2d 338 (1978). In *Gilborges*, the employee, a truck driver, arrived at the employer's terminal one evening. He was scheduled to make a trip early the next morning and borrowed a pickup truck from his employer to drive to his home to sleep and pick up some fresh clothing. The next morning, on his return to the terminal, he was involved in an accident. The court held that under these facts reasonable minds could differ as to whether the driver's trip to and from his home prior to the accident served a dual purpose, one of which was the advancement of the employer's business.

■ As in *Gilborges*, the facts in this case support the submission of the agency question to the jury. The jury could have found that Hawk's trip was not concluded until he returned to General's office the morning after his midnight arrival in Kansas City. Under the dual purpose doctrine

which is recognized in Missouri, *Wolfe v. Harms*, 413 S.W.2d 204, 216 (Mo.1967), a jury question was presented just as it was in *Gilborges*. Reasonable minds could differ as to whether or not Hawk was acting within the scope and course of his employment at the time of the accident by reason of not having completed his New Orleans trip. The question was one of fact to be settled by the jury. *De Mariano v. St. Louis Public Service Company*, 340 S.W.2d 735, 739[1, 2] (Mo.1960).

The next contention is that a motion for a directed verdict in favor of General and Hawk should have been sustained after Cooper's counsel made his opening statement because counsel did not state facts showing that Hawk was in the course and scope of his employment at the time of the accident. Counsel stated the facts outlined above concerning Hawk's trip to New Orleans. However, General and Hawk hinge their contention on the fact that counsel stated that Hawk was on his way to work. The discussion above holding that a jury question was presented on the agency question because of the New Orleans trip disposes of this point. As illustrated, counsel stated facts showing a basis for a finding of agency at the time of the accident.

 General next contends that Robert's verdict directing instruction was erroneous in several respects. The first objection is that the instruction contained a tail which referred to a contributory negligence instruction offered by General and Hawk rather than to Hawk's humanitarian verdict director given on his counterclaim. The argument is that by failing to refer to Hawk's humanitarian verdict director the court misled the jury.

Robert's verdict director required the jury to find that Hawk was negligent in certain respects. The contributory negligence offered in response to the instruction submitted various acts of negligence on the part of Robert which would preclude his right to recovery. The instructions in this case were packaged according to MAI 2.00. Robert's verdict director and the contributory negligence instruction were included in the package applicable to Robert's claim for injuries. Hawk's humanitarian verdict director was in the separate package applicable to his counterclaim. However, the important factor is that the negligence of Robert as submitted in the contributory negligence instruction and as submitted in Hawk's humanitarian are virtually identical. The contributory negligence instruction submitted that Robert failed to keep a careful lookout, or failed to stop or swerve after he knew, or should have known, that there was a reasonable likelihood of a collision, when to have done so could have avoided the collision. The negligence Hawk submitted in the humanitarian instruction was that Robert failed to slacken his speed, swerve, or stop after he knew, or should have known, that Hawk was in a position of immediate danger and that by doing any of the submitted acts could have avoided injury to Hawk. Thus, the acts of negligence submitted in the contributory negligence and the humanitarian instruction were, for practical purposes, identical. A finding by the jury on Robert's verdict director necessarily precluded a finding for Hawk on his humanitarian claim. For that reason the instructions are not in conflict.

The proper test is not whether Robert's verdict director failed to refer to Hawk's humanitarian instruction, but whether the instructions were in such conflict that the jury could return a verdict for Robert on his claim and at the same time return a verdict for Hawk on his counterclaim. *Banks v. Koogler*, 291 S.W.2d 883, 890[20][21, 22] (Mo.1956). Because the instructions were not in conflict and the jury could not find for Robert on his claim in the face of the contributory negligence instruction and at the same time find Robert guilty of the negligent acts submitted in the humanitarian, there was no error in failing to refer to the humanitarian in Robert's verdict director.

 It is next contended that the court did not read the instructions as written. In some instances the argument is that the court added words and in other instances, omitted words. However, there is no

record in this court of the reading of the instructions to the jury. Thus, there is no record on which this court can determine whether the court did correctly read the instructions. It is the duty of an appellant to furnish a transcript containing a record of proceedings which he desires to have reviewed. In the absence of such record there is nothing for the appellate court to decide. *Davis v. Long*, 521 S.W.2d 7, 8–9[3, 4] (Mo.App.1975).

It is next contended that two instructions referred to Hawk as "defendant Raymond Hawk" instead of "driver Raymond Hawk" as prescribed by MAI. Absent any dispute that Hawk was driving, this contention is so devoid of merit as to warrant any discussion.

The next contention is that MAI 13.-05 should have been given instead of MAI 13.04. Instruction 13.04, labeled "Definition-Agency-Scope of Employment-Route Deviation," states that acts were within the scope of employment if they were done to serve the interest of General while Hawk was at a place where the performance of his work required him to be. Instruction 13.05, labeled "Definition-Agency-Scope of Employment," would have told the jury that acts were within the scope and course of employment if they were a part of the work which Hawk was employed to perform and which was done to serve the business interest of General.

Nothing in the Notes On Use requires that one and not the other of these two instructions be given. The Notes to 13.04 state that the definition assumes there is no controversy about the existence of a master-servant relationship. The issue in this case is not whether such a master-servant relationship existed between Hawk and General, but whether or not at the time and place of the accident Hawk was acting within the scope of his employment. Instruction 13.04 is the only instruction which precisely directs the attention of the jury to the time and place of the accident and to whether or not at that time Hawk was at a place where the performance of his work required him to be. Considering that Hawk had gone to New Orleans, returned home, and was then on his way to General's office, it is clear that 13.04 more nearly than 13.05 submits to the jury the ultimate issue. There was no error in giving 13.04 under the facts in this case.

The next contention relates to a number of rulings by the trial court on evidentiary matters. In three of the matters raised there was no objection to the evidence which is now complained about. Absent an objection at the time of trial the claim of error is foreclosed. *Mueller v. Storbakken*, 583 S.W.2d 179, 186[6] (Mo. banc 1979). Another instance complained of was in regard to an objection made during the opening statement about injury sustained by a passenger in Robert's car. The court sustained the objection and instructed the jury to disregard the statement. Thereafter, a motion for mistrial was denied. Absent an abuse of discretion the trial court's action in denying a motion for a mistrial will stand. *Hoene v. Associated Dry Goods Corporation*, 487 S.W.2d 479 (Mo.1972). An abuse of discretion is neither alleged nor shown.

The final evidentiary matter of which complaint is made reveals that the court sustained the objection and no further relief was requested. When all relief requested of the trial court is granted, there is no prejudice shown. *Hannibal Sales Company v. Solter*, 551 S.W.2d 936, 939[3] (Mo.App.1977).

Complaint is next made that the award of damages to Ruth is excessive and constitutes double damages. A request was made to the trial court to order a remittitur in Ruth's judgment but the court refused. The failure of a trial court to order a remittitur is subject to reversal only upon a showing of abuse of discretion. *Woodford v. Illinois Central Gulf Railroad Company*, 518 S.W.2d 712, 718[13–17] (Mo.App.1974). Once again, an abuse of discretion is neither urged nor found. The complaint is made also that the award of damages to Ruth for her loss of consortium constitutes an award of double dam-

ages for Robert's injuries. A similar contention was fully addressed and rejected in *Novak v. Kansas City Transit, Inc.*, 365 S.W.2d 539, 544 (Mo. banc 1963). The issue of Ruth's loss of consortium was properly presented to the jury and delineated the loss suffered by her. As held in *Novak*, this does not constitute an award of double damages.

The next complaint concerns the converse offered by Robert to Hawk's humanitarian verdict director. This instruction covers only the issue of negligence without repeating the acts of negligence charged against Robert in the verdict director. The acts of negligence submitted against Robert were failure to slacken speed or swerve or stop and were, thus, submitted in the disjunctive. In *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291, 304–05[4] (Mo. banc 1978), the court held that it is permissible to converse only the negligence paragraph of an instruction without conversing all disjunctive specifications. It is further contended that the acts with which Robert was charged were not set out in the converse and, thus, the jury was misled because it had no definition of the negligent acts it would have to find in the converse. In *Griffith v. Saavedra*, 409 S.W.2d 665, 667[2] (Mo.1966), the court considered an attack upon a converse to a humanitarian instruction. The court noted that the converse referred to the verdict director and that the two instructions must be read together. In this case, the converse immediately followed the humanitarian instruction and was a part of Hawk's package even though it did not refer to the verdict director. It is apparent the jury would have read the two instructions together and in so doing it is obvious that the jury was aware of the negligent acts which the humanitarian attributed to Robert. There was no error in giving the converse.

The final complaint is that Ruth's verdict directing instruction allows the jury to find without evidentiary support that Ruth is reasonably certain to sustain damage in the future. From the description of the injuries suffered by Robert set out at the beginning of this opinion, it is apparent that the jury could find that Robert suffered injuries of a permanent nature. This would support a finding that Ruth would continue to suffer loss of consortium in the future.

The judgment is affirmed.

All concur.