**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Sidney HAMILTON,
Defendant-Appellant.**

No. 49075.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 24, 1985.

Motion for Rehearing and/or Transfer
Denied Jan. 21, 1986.

Application to Transfer Denied
March 25, 1986.

Beth S. Ferguson, Asst. Public Defender, St. Louis, for defendant-appellant.

John Munson Morris, Mark Anthony Richardson, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Presiding Judge.

Defendant, Sidney Hamilton, was jury-tried and convicted of robbery in the first degree, § 569.020 RSMo 1978, and armed criminal action, § 571.015 RSMo 1978. Defendant was sentenced to consecutive terms of twenty years for the robbery offense and ten years for armed criminal action. Defendant contends the trial court erred in: (1) overruling defendant's challenges for cause to strike venirepersons Moore and Greer; and (2) refusing to grant a mistrial and request for new jury panel because the state used all its preemptory challenges to exclude blacks from the jury. Affirmed.

Defendant first contends the trial court erred in failing to strike for cause venirepersons Moore and Greer. Mrs. Moore was challenged by the defendant because she was married to a police officer, acquainted with two witnesses who were police officers, and knew the trial judge from church. Mr. Greer was challenged because he was a complaining witness in a previous case handled by the same prosecuting attorney.

■ To protect the defendant's right to a jury free from objectively demonstrated and subjectively sensed partiality, he must be afforded a full panel of qualified veniremen from which to make his allotted preemptory challenges. *State v. Engleman*, 634 S.W.2d 466, 471 (Mo.1982). While trial court refusal to sustain a valid challenge for cause constitutes reversible error, *Id.* at 471, it is well established that the trial court has wide discretion in determining the qualifications of a venireman, and its decision will not be disturbed absent a clear abuse of discretion. *State v. Hopkins*, 687 S.W.2d 188, 189 (Mo. banc 1985).

Excerpts from venirewoman Moore's examination on voir dire are as follows:

PROSECUTOR: Thank you. Ms. Moore, who is it that you know?

VENIREWOMAN: Judge Peek.

Q: And how is it that you know him?

A: Through church.

Q: And, ma'am, you think you have any problem following instructions, for instance, given you by the judge who you happen to know?

A: Yes—No.

Q: You would be able to be fair to both sides in this case?

A: Yes.

. . . . .

Q: ... Does anyone know either of those two 3rd District police officers? Don Hall, he's now assigned to the mounted police. And Jonathan Evenstad. Roy Perkins and Roy Robertson, both assigned to the 2nd District Police Department.

A: Yes. Roy Perkins.

Q: How do you know him, ma'am?

A: Well, my husband is a sergeant on the police force and he was in the police association with Roy.

Q: The fact that you know him and have had some contact with him, do you think that would affect you in this case?

A: No.

Q: Do you understand that he will be testifying in this case?

A: I don't know him socially. I have met him on one occasion, that's all.

Q: Fine.

A: But I thought I would mention it.

Q: Thank you. You think you would be able to be fair to both sides?

A: Yes.

Q: Does anyone else know either of the officers I just mentioned, Officer Perkins, or Officer Robertson?

Does anyone know an Officer Harvey Laux, assigned to the evidence technician?

A: He works for my husband. My husband is a sergeant and he's a sergeant over the Evidence Technician Unit.

Q: And, ma'am, you talk to your husband about his work very much?

A: No, we don't.

Q: Not at all?

A: No, we don't. I just know his name. I wouldn't know him if I passed him on the street.

Q: And if there is some testimony. If, for instance, you're one of the jurors in this case and there is testimony regarding fingerprint evidence by the Evidence Technician Unit, do you think that you would be able to treat that witness as you would any other witness?

A: Yes.

Q: You would be able to be fair to both sides in this case?

A: Yes.

Q: Your association with the police department wouldn't make you believe a witness or disbelieve that witness simply because he's a witness with the police department?

A: I'm married to a policeman, but I'm not married to the police department.

.     .     .     .     .

DEFENSE COUNSEL: Your husband talk about his work?

VENIREWOMAN: That was about 16 years ago. We made an agreement we would not discuss it. ...

DEFENSE COUNSEL: Okay. You wouldn't tend to believe police officers more quickly than you believe the civilians?

VENIREWOMAN: No, I don't believe I would.

■ A relationship to a police officer alone is not a basis for challenging a juror for cause. *State v. Hopkins*, 687 S.W.2d 188, 190 (Mo. banc 1985). It has also been suggested that acquaintance with interested parties may be insufficient in itself to require exclusion. *State v. Holliman*, 529 S.W.2d 932, 940 (Mo.App.1975). It is these relationships combined with other factors to indicate a lack of impartiality that a challenge for cause must be sustained. *Hopkins*, 687 S.W.2d at 190. Here, venirewoman Moore, although married to a police officer stated she did not know socially either of the police officers who were to be

witnesses. She stated unequivocally that her acquaintance with the judge through her church and her association with the police department through her husband would not prejudice her against the defendant.

The court in *State v. Holliman*, 529 S.W.2d 932, 939 (Mo.App.1975) determined that unless there is some fact which a reviewing court can reasonably say, in and of itself, necessarily showed prejudice, there is an admission of prejudice, past or present, or unless there is something in the demeanor of venireman which despite his actual words, discloses existence of prejudice in fact, a reviewing court shall not convict the trial court of an abuse of discretion in overruling challenges for cause. Upon careful review of the record we detect no prejudice by venirewoman Moore or an abuse of discretion by the trial court.

Defendant also claims venireman Greer should have been stricken for cause because of his previous association with the prosecuting attorney.

Mr. Greer stated the following on voir dire:

PROSECUTOR: Is there anyone else that feels that they know me? Mr. Greer?

VENIREMAN: Right.

Q: How do you know me? You look familiar.

A: A couple of years ago you handled a trial which I was a witness and we discussed the case.

Q: Was it a misdemeanor trial in Division 26?

A: It probably was.

.     .     .     .     .

Q: You would be able to be fair to both defendants in this case and also to the State?

A: GREER: Yes, sir.

.     .     .     .     .

DEFENSE COUNSEL: ... Mr. Greer, you have already had an experience with Mr. Minnick in his capacity as a prosecuting attorney?

VENIREMAN: Yes, ma'am.

Q: ... Just because of that experience, do you have positive feelings about Mr. Minnick?

A: Sure, I have positive feelings. But I don't think it would be anything to influence me.

Q: Okay. And do you think Mr. Minnick would put on evidence that was in any way false?

A: From what I have seen of him, I don't think so.

Q: Okay. And do you think Mr. Minnick would ever try a case where it was really questionable whether the person was guilty of the crimes that were charged?

A: That's hard to answer from what little I know of him. I'm sure from what I met of him, he's honest I think; I don't think he would do anything like that.

Q: So you don't think he would put on a case where there was really a question of whether or not the people were guilty?

A: No, sir, of his own mind.

. . . . .

Q: Okay. But, you know, Mr. Minnick is going—is telling you that he's going to put on evidence that he committed a crime. All right? He's going to put on evidence that he feels shows that he committed a crime, okay? So, are you saying that you think Mr. Minnick—I think you did say that already—that you think Mr. Minnick believes in this case?

A: Right, I'm sure he does or else he wouldn't be presenting it.

Q: Okay.

A: But I also feel that you must be believing in your case or you wouldn't be presenting it either.

■ Our supreme court in *State v. Jones*, 384 S.W.2d 554, 558 (Mo.1964) held the trial court did not abuse its discretion in refusing to strike for cause in a forgery case a venireman who had been a complaining witness for the prosecuting attorney in a bad check case. Here, Mr. Greer stated that although he had a positive experience in the case in which he was previously and personally involved with the prosecuting attorney, his positive feelings would not be anything to influence him. The statements made by Mr. Greer indicate no prejudice towards the state. Under the standard presented in *Holliman,* we find no abuse of discretion.

In defendant's second point he alleges the trial court erred in refusing to grant a mistrial when the state used its preemptory challenges to exclude blacks from the jury because the defendant here is black and the victim white. Defendant urges us to reconsider or restrict the Supreme Court's holding in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In that case the court decided that there was no proof of systematic striking of Negroes in Talladega County, Alabama, and stated:

> We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecution is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance ... If the state has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify.

*Id.* 380 U.S. at 223–24, 85 S.Ct. 837.

■ Although *Swain* has been criticized in other jurisdictions the courts in Missouri

have continued to rely on this decision. *See State v. Baker*, 524 S.W.2d 122 (Mo. banc 1975); *State v. Sims*, 639 S.W.2d 105 (Mo.App.1982). Defendant, here does not allege the facts necessary to meet the stringent requirements established in *Swain.* Defendant presents no evidence that the prosecutor in the City of St. Louis is responsible in "case after case" for systematic exclusion of blacks who have been selected as qualified jurors by the jury commissioners. There is no right that blacks must serve on a jury in a criminal case, and the absence thereof is not proof of systematic exclusion. *State v. Blevins,* 581 S.W.2d 449, 453 (Mo.App.1979).

■ The defendant has the burden of presenting a prima facie case of racial discrimination before the state is required to justify its jury selection process. *State v. Carter*, 572 S.W.2d 430, 433 (Mo.App.1978), citing, *Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). We find defendant has failed to meet his burden. No showing of "repeated exclusion of an ostensibly neutral selection procedure, nor a procedure under which a subjective evaluation of potential jurors could hide discrimination" has been made. *Carter,* 572 S.W.2d at 434.

Further, defendant has failed to show "proof as to racial composition or of the method of name selection for the 'wheel' for the year or other representative period, nor are we told of the selection process or racial composition of the panel by months, weeks or days from which the array presented on the day of trial was selected." *Id.* We find that defendant has not made a prima facie case of racial discrimination in the jury selection process of this case.

We find no abuse of discretion by the trial court. *Cooper v. General Standard, Inc.*, 674 S.W.2d 117, 122 (Mo.App.1984).

Affirmed.

SIMON and GARY M. GAERTNER, JJ., concur.