David R. & Deborah A. TUTTLE,
Appellants,

v.

Sylvester W. & Mary Lou MUENKS,
Defendants,

and

Roadway Express, Inc., Respondent.

No. WD 54014.

Missouri Court of Appeals,
Western District.

Submitted Dec. 9, 1997.

Decided March 10, 1998.

Fred R. Bunch, Clinton, for appellant.

Scott W. Mach, Kansas City, for respondent.

Before ULRICH, C.J., P.J., and SMART and LAURA DENVIR STITH, JJ.

SMART, Judge.

David R. Tuttle and Deborah A. Tuttle were injured in an automobile accident when a car driven by Sylvester W. Muenks struck another car, sending that car into the path of the Tuttle automobile. They filed suit against Mr. Muenks and against Roadway Express, Inc. ("Roadway"), Mr. Muenks' employer. The claim against Roadway was based upon the theory of respondeat superior. Roadway moved for summary judgment, contending that it was entitled to judgment as a matter of law, because there was no substantial evidence that Muenks was in the course and scope of his employment for Roadway at the time of the collision. The trial court granted Roadway's motion for summary judgment. The Tuttles appeal, claiming that the trial court erred in granting Roadway's motion because genuine issues of material fact exist as to whether Mr. Muenks was acting in behalf of Roadway at the time of the accident. Because we find that there are genuine issues of material fact as to whether Mr. Muenks was acting within the scope and course of his employment at the time of the accident, we reverse the judgment of the trial court.

On Friday, September 6, 1991, David R. Tuttle was traveling home from work. He was driving west on Highway 50 near Jefferson City. His wife, Deborah, was a passenger in the car. When a vehicle driven by Sylvester Muenks rear-ended the vehicle traveling in front of it, that vehicle was forced into the path of the Tuttle vehicle, causing a collision which resulted in injuries to Mr. and Mrs. Tuttle.

Mr. Muenks was an employee of Roadway. He was employed by Roadway in its Sedalia, Missouri branch and was paid by the hour for making deliveries. At the time that Mr. Muenks was involved in the accident, he was not on the clock. Mr. Muenks was driving his own vehicle. Mr. Muenks intended to pick up his paycheck at Roadway's Jefferson City office, and to drop off papers at the office. Mr. Muenk was involved in the collision before he reached either his home or the Jefferson City office.

On September 9, 1993, before the lawsuit was filed, Mr. Muenks gave a sworn statement. He was asked questions concerning the collision and his employment with Roadway. The statement, attached to the Tuttles' response to Roadway's motion for summary judgment, contained the following:

Q. Okay. When you left the terminal, did you make any stops anywhere?

A. No.

Q. When you were on your trip, were you intending to make any stops anywhere?

A. No—well, yes. I was going—I was going through the terminal in Jeff

City. My home office is in Jeff City. That's where I was going—heading for Jeff City—I mean, to the terminal to the—see, my bills go to Jeff City and I just leave papers off there in Jeff City. That's where I go, right there—it's just right there—it's just— if I'd have been approximately a mile further at this turnoff, St. Martin's turnoff, it goes right there to Jeff City terminal.

Q. So you were going to stop at the terminal in Jeff City?

A. Right.

Q. And what was the purpose of you stopping there?

A. To leave paperwork.

Q. What kind of paperwork?

A. Billing, delivery receipts.

Q. Okay. I don't know much about trucking so—

A. This is delivery receipts. In other words, when you deliver to a person, you have a receipt they sign and—see, we use signed by the truck—on Friday nights I bring the paperwork along with me.

Q. So was this all of the paperwork for all of the activity that had taken place at the Sedalia terminal that week, or for that day or what?

A. That day.

Q. For that day. All right. So all of the trucking activity for Roadway that occurred that day in Sedalia, you had that paperwork with you and you were coming by the terminal or the office in Jeff City and were going to drop that off; is that right?

A. Right, right.

* * * *

Q. Was it routine for you to—like on Fridays to deliver this paperwork by Jeff City?

A. Yes, it is.

Q. Did they provide any sort of compensation to you for that?

A. No. It's my—I bring the paperwork along every Friday night.

Q. Done that for—

A. Ever since I been there. Monday morning—Monday or Sunday evening when I go up, I pick up the bills and take them along with me.

Q. And they depend on you to do that?

A. Right.

At a deposition taken on May 9, 1996, Mr. Muenks was asked additional questions about his delivery of paperwork to Roadway. He testified he normally took paperwork to the Jefferson City terminal at the end of the week. The paperwork from the Sedalia terminal was never mailed, but was either delivered by the drivers or by Mr. Muenk.

Steven Hodges, an employee who worked at the Jefferson City terminal at the time of the collision, stated in an affidavit that Mr. Muenks routinely dropped off paperwork to the Jefferson City terminal on Friday evenings. The paperwork delivered by Mr. Muenks would be entered into the system to keep track of the freight shipped through the Sedalia terminal. A somewhat different emphasis was provided in the affidavit of Marty Gooch, the manager of the Roadway terminal in Sedalia at the time of the collision. Mr. Gooch stated that the general business practice of Roadway was to put documents in an eastbound truck or to have Mr. Muenks fax copies to the Jefferson City office. Mr. Gooch stated that it was not part of Mr. Muenks' job duties to drop off documents at the Jefferson City terminal.

The Tuttles filed their petition for damages claiming that Mr. Muenk was acting within the scope and course of his employment for Roadway when the collision occurred. Roadway's motion for summary judgment asserted that the Tuttles could not prove all the elements to establish a claim under the doctrine of respondeat superior. The trial court granted Roadway's motion, stating:

The court finds upon the defendant's motion and the suggestion of counsel that summary judgment is this cause is proper and that the defendant Roadway has established that it is entitled to judgment as a matter of law. There are no material facts in controversy and the court finds that defendant Muenks was not acting

within the scope and course of his employment with Roadway Express, Inc. at the time of the accident and that the circumstances plead do not constitute a special exception to the going and coming rule set forth in *Logan v. Phillips*, 891 S.W.2d 542 (Mo.App.1995).

The Tuttles appeal.

## SUMMARY JUDGMENT

Appellate review of a summary judgment is a *de novo* review. *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996). This court reviews the record in the light most favorable to the party against whom the judgment was entered, according that party all reasonable inferences drawn therefrom. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The moving party bears the burden of establishing that it is entitled to judgment as a matter of law. *Id.* at 382. Evidence in the record presenting a genuine issue of material fact defeats a movant's right to summary judgment. *Id.* A genuine issue "implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities." *Id.* at 378. Therefore, the dispute must not be simply argumentative, frivolous or imaginary. *Id.* at 382.

A defendant can establish the right to judgment as a matter of law by showing any of the following: (1) that the facts negate an essential element of the plaintiff's claim; (2) that the non-movant, after an adequate period of discovery, has not produced and cannot produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to any of the elements of a properly pleaded affirmative defense. *Id.* at 381. We take as true the facts that are set out in support of the motion for summary judgment unless they are in some way contradicted by the non-moving party's response to the motion. *Id.* at 376. The non-moving party cannot rely upon mere allegations and denials of the pleadings but instead must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate that a genuine issue of material fact exists

for trial. *Reeves v. Keesler*, 921 S.W.2d 16, 19 (Mo.App.1996).

## RESPONDEAT SUPERIOR

In their sole point, the Tuttles argue that the trial court erred in granting summary judgment to Roadway because a genuine issue of material fact exists as to whether Mr. Muenks was acting within the scope and course of his employment at the time of the collision. The Tuttles contend that there is a genuine issue of material fact as to the significance of the paperwork that was being delivered by Mr. Muenk. They contend that the paperwork generated at the Sedalia terminal had to get to the Jefferson City terminal and that without this paperwork, Roadway could not properly manage to run its business. Roadway contends that there is no genuine issue of material fact remaining and that the "going and coming" rule precludes a finding of liability on its part. Roadway claims that neither of the exceptions to the rule, the "special errand" exception or the "dual purpose" exception is applicable in this case.

Under the doctrine of respondeat superior, an employer is held responsible for the misconduct of an employee where that employee is acting within the course and scope of his employment. *McHaffie By & Through McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo. banc 1995). The liability on the part of an employer attaches despite the absence of any negligence on the part of the employer. *Helm v. Wismar*, 820 S.W.2d 495, 497 (Mo. banc 1991). If reasonable minds could differ on the question of whether an employee was acting within the scope and course of his or her employment, then the question is one of fact to be settled by a jury. *Cooper v. General Standard, Inc.*, 674 S.W.2d 117, 121 (Mo.App.1984).

Generally, an employer is not liable for damages under the doctrine of respondeat superior for injuries caused by an employee's negligent operation of a vehicle which occurred while that employee is going to or coming from work. *Logan v. Phillips*, 891 S.W.2d 542, 544 (Mo.App.1995). No one disputes that Mr. Muenks' ultimate destination on the evening in question was his home in

Loose Creek. However, this does not end our inquiry. Missouri courts have recognized several exceptions to the general rule.

One such exception is the "special errand" exception, described in *Logan*, as applying "when an employee, having identifiable time and space limits on his employment, makes a journey which would normally fall under the going and coming rule, but invests substantial time and trouble, or suffers special inconvenience, hazard or urgency in making the journey under the particular circumstances so that it can be viewed as an integral part of the service itself." *Id.*

In *Logan*, which also involved the appeal of a grant of summary judgment to employer, the court rejected the argument that the issue of whether an employee was acting within the scope of his employment at the time of the accident was a question for the jury. *Id.* The employee in *Logan* was a police officer who, at the time of the accident, had completed his day shift and was driving his personal vehicle from his home to court, where he was to testify on behalf of his employer, the City of Arnold. *Id.* at 543. Although the officer was in uniform and was carrying a department firearm, the officer was not being paid for the time he spent traveling but would only be compensated for the time he spent in court. *Id.* The *Logan* court held that the special errand exception to the going and coming rule did not apply because the employee "did not invest substantial time or trouble in making the journey, nor did he suffer special inconvenience, hazard or urgency...." *Id.* at 544. The court noted that a determination of the employer's liability involves inquiry as to whether the employer had any control or right of control as to how, when or if employee arrived at his place of employment. *Id.* Officer

Phillips was driving his own vehicle, was not reimbursed for travel expenses, was not performing any official duties at the time of the collision, was not being paid until he arrived at the courthouse to testify and was not under the control of his employer as to the operation of his vehicle or as to his method or route of transportation. *Id.*

Similarly, in the instant case, it is not disputed that Mr. Muenks was driving his own car, was not reimbursed for travel, and was not performing any official duties at the time of the accident with the Tuttles. There is nothing in the record supporting a claim that Mr. Muenks invested any substantial time, went to any substantial trouble, or suffered a special inconvenience, hazard or urgency in stopping by the Jefferson City office on his way home. To the contrary, the record shows that Mr. Muenks had another reason to go to the Jefferson City office. He wanted to pick up his paycheck rather than wait for it to arrive by mail. Thus, Roadway argues that this case is controlled by *Logan*.

The Tuttles do not argue with *Logan's* application of the "going and coming" rule. However, they assert that another exception to that rule applies in this case—the dual purpose doctrine. *See, e.g., Williams v. ServiceMaster*, 907 S.W.2d 193, 194 (Mo.App. 1995). The dual purpose doctrine provides that if the employee's work requires the travel, the employee deemed to be in the course of his employment although he may have been attending to a simultaneous personal purpose. *Id.* For the dual purpose doctrine to apply, the travel must have been necessary even where a personal purpose is lacking. *Id.* "The 'dual purpose doctrine' is firmly established in Missouri." *Delozier v. Munlake Const. Co.*, 657 S.W.2d 53, 56 (Mo. App.1983).[1]

---

1. The dual purpose doctrine is often examined in the context of workers' compensation cases. For example, in *Cox v. Copeland Bros. Constr. Co.*, 589 S.W.2d 55, 60–61 (Mo.App.1979), we held that the doctrine applied where a plumbing foreman was killed when he was traveling from his home to his job carrying plans that he had worked upon in his spare time. In *Corp v. Joplin Cement Co.*, 337 S.W.2d 252, 258 (Mo. banc 1960), the doctrine applied where an employee was traveling to get his paycheck and to pick up some building materials to take to a job site. In

*Downs v. Durbin Corp.*, 416 S.W.2d 242, 247 (Mo.App.1967), the doctrine applied where the employee was injured at the time he was taking some of his employer's lumber home overnight to deliver the next day. Roadway argues that worker's compensation cases are not apt authority in common law negligence cases because the Workers' Compensation Act is liberally construed in favor of the injured employee. Despite the distinction, we find these cases instructive in understanding the concept of dual purpose.

The court in *Gingell v. Walters Contracting Corp.*, 303 S.W.2d 683 (Mo.App.1957) explained the doctrine, stating:

As we understand this formula, it is not necessary that, on failure of the personal motive, the business trip would have been taken anyway *by this particular employee at this particular time.* It is enough that some one would have had to make the trip to carry out the business mission. If the trip would ultimately have had to be made, and if the employer got this necessary item of travel accomplished by combining it with the employee's personal trip, it would be a *concurrent cause* of the trip, rather than an incidental appendage or afterthought. There is no occasion to weigh the business and personal motive to determine which is *dominant.*

. . . .

We think this same formula is applicable when an employee, in the course of his normal journey to and from work, performs some *concurrent service* for his employer, and becomes an exception to the general rule excluding off-premises going-and-coming journeys—such as going from his home to his place of employment or returning therefrom to his home. The question then becomes: Was the mission of such a character or importance that it would have necessitated a trip by someone if this employee had not been able or willing to handle it in combination with his homeward journey?

*Id.* at 688–89 (emphasis in original).

Roadway reminds us, citing *American Multi–Cinema, Inc. v. Talayna's N.W., Inc.*, 848 S.W.2d 557, 559 (Mo.App.1993) of the proposition that the out-of-court statements made by an alleged agent cannot be used to establish the scope of the fact of the agency. Of course, we are not here deciding whether or not Mr. Muenks was, in fact, acting within the scope and course of his duties at the time of the collision. Instead, we are considering the affidavits and depositions in an effort to anticipate what the evidence at trial would be, to determine whether there is a question of material fact. Therefore, we consider the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

■ The question posed by the *Gingell* court reveals that there remain some unanswered questions concerning the possible applicability of the dual purpose doctrine. It is not disputed that the paperwork had value to Roadway's business operations. The inquiry as to whether there was a dual purpose in this case is extremely fact sensitive. The picture remains murky as to certain factual matters. The affidavit of Mr. Gooch is the only affidavit which mentions anything about transmission by fax. The affidavit does not say that the receipts had ever been transmitted by fax; instead, it states that the material *could* have been faxed. The fact that the documents could have been faxed may be relevant, but it is not dispositive for summary judgment purposes. Muenks indicated the paperwork was always either delivered by a line driver, or was delivered by him. There are a variety of facts which may bear on the dual purpose inquiry.[2] Without having more factual details on the present record, we must conclude that there exists a genuine issue of material fact as to whether Mr. Muenks was acting only in his own behalf at the time of the collision, or whether he was performing a concurrent service for his employer.

If, after consideration of all relevant facts, reasonable minds could differ about whether it was necessary for Muenks to make the trip to the terminal apart from Muenks' personal purpose of picking up his paycheck, the question is a factual issue to be settled by the

**2.** One wonders whether other drivers brought the paperwork only when they were coming to the terminal anyway, or whether they went out of their way to bring the paperwork. One also wonders whether it would have served Roadway's purposes just as well on the day of the incident for Muenks to have sent the paperwork by another driver instead of bringing it himself. Was another driver available to bring it at the right time? Was there an advantage to the employer in the fact that Muenks brought it himself rather than faxing it or sending it by another driver?

jury. *See Cooper v. General Standard, Inc.,* 674 S.W.2d 117, 121 (Mo.App.1984).

The judgment of the trial court is reversed and the case is remanded for further proceedings.

ULRICH, C.J., P.J., and TURNAGE, J., concur.