NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3134-16T1

RONALD HARRIS and
PATRICIA HARRIS, h/w,

 Plaintiffs-Appellants,

v.

BERNARDO CHAVEZ-ECHEVERRY,

 Defendant,

and

BOARDWALK ACURA, NJ-HAII,
INC., and GROUP 1 AUTOMOTIVE,
INC.,

 Defendants-Respondents.

————————————————————————————————

 Argued October 11, 2017 – Decided October 24, 2017

 Before Judges Hoffman, Gilson and Mayer.

 On appeal from Superior Court of New Jersey,
 Law Division, Atlantic County, Docket No.
 L-5071-14.

 Richard A. Stoloff argued the cause for
 appellants.

 Gerald T. Ford argued the cause for
 respondents (Landman Corsi Ballaine & Ford,
 PC, attorneys; Mr. Ford, of counsel and on the
 brief; Fay L. Szakal, on the brief).

PER CURIAM

 By leave granted, plaintiffs Ronald and Patricia Harris1

appeal from a February 17, 2017 Law Division order granting summary

judgment in favor of defendants Boardwalk Acura, NJ-HAII, Inc. and

Group 1 Automotive, Inc. As genuine issues of material fact exist

in the record, we vacate the order granting defendants' motion and

remand for further proceedings.

 I.

 We view the factual record in the light most favorable to

plaintiff as the non-moving party. See Brill v. Guardian Life

Ins. Co. of Am., 142 N.J. 520, 540 (1995). This case arises from

an accident that occurred on August 23, 2012, when defendant

Bernardo Chavez-Echeverry, driving a dealership car, struck

plaintiff's motorcycle, causing him to sustain serious bodily

injury. At the time, defendants Boardwalk Acura, NJ-HAII, Inc.

and Group 1 Automotive, Inc. employed Chavez-Echeverry as a "lot

person." His duties included moving cars on the lot, taking out

trash, picking up and dropping off clients at their homes, and

putting gas in dealership vehicles.

1
 For ease of reference, we refer to Ronald Harris individually
as plaintiff.

 2 A-3134-16T1
 Chavez-Echeverry testified that on the day of the accident,

he requested and received the keys to a dealership car in order

to fill it with gas. After he left the dealership, but before he

stopped for gas, he decided to go home because he forgot to lock

his house door. He did not inform anyone he was going home in the

dealership car and he knew it was against company policy to do so.

Chavez-Echeverry's home was five minutes from the dealership. The

accident occurred on his way home.

 Chavez-Echeverry testified he would usually get gas at either

the station next to the dealership or the one near his home.

Chavez-Echeverry knew he was not permitted to do personal errands

while driving dealership cars, but he sometimes did anyway without

informing anyone. Chavez-Echeverry testified that when he took a

car to get gas he had to request the keys and tell someone why he

was taking the car.

 Brian Broomell, the general manager of Boardwalk Acura and

Chavez-Echeverry's supervisor, said the gas station next to the

dealership was the only station authorized for filling vehicles.

Broomell also said Chavez-Echeverry could just go get keys to a

dealership car without asking permission; in addition, Chavez-

Echeverry was the only employee in charge of filling vehicles with

gas.

 3 A-3134-16T1
 Chavez-Echeverry's driving record as of July 2011 had two

unsafe operation convictions, one accident (on the same day as one

of the unsafe driving convictions), two unlicensed driver

convictions, and one operating while suspended or revoked

conviction. However, his license was in good standing on the date

of the accident. Between February and April 2012, defendants'

human resources (HR) department sent or received seven emails

concerning Chavez-Echeverry's job performance, including

insubordination problems and possible drinking on the job.

 Broomell agreed that employing someone with two unsafe

operation convictions, within several months, would give him

"cause for concern" and that he "would want to know about it."

Broomell further admitted receiving information regarding Chavez-

Echeverry's driving before plaintiff's accident, as reflected in

this colloquy from his deposition:

 Q: Did anybody ever tell you that they
 thought he was potentially an unsafe
 driver?

 A: Yes.

 Q: Who was that?

 A: I don't recall.

 Q: Can you tell me when?

 4 A-3134-16T1
 A: I think it is in one of the memos.2

 Q: Okay. Was it before or after the
 collision we're here for?

 A: Before.

 Q: Okay. And do you remember who it was
 that told you that?

 A: No.

 Q: Do you remember why they said they
 thought he was an unsafe driver before
 the collision?

 A: Repeat the question.

 Q: Could you tell me why they . . . told you
 they thought he was an unsafe driver
 before the date of this accident?

 A: They thought he was drinking on-the-job
 at times.

The record does not reflect whether defendants took any steps to

investigate the reports of Chavez-Echeverry's on-the-job drinking,

even though the HR manager conceded such information "would give

[her] concern."

 II.

 In deciding a summary judgment motion on appeal, we "review

the trial court's grant of summary judgment de novo under the same

2
 Broomell sent an email to HR on April 14, 2012, stating, "[Two]
people have told me today that Bernardo [Chavez-Echeverry] drinks
on the job."

 5 A-3134-16T1
standard as the trial court" and accord "no special deference to

the legal determinations of the trial court." Templo Fuente De

Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J.

189, 199 (2016). Under this standard, we must grant summary

judgment "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact challenged and that the moving party is entitled to

a judgment or order as a matter of law." Ibid. (quoting R. 4:46-

2(c)).

 "If there is no genuine issue of material fact, we must then

'decide whether the trial court correctly interpreted the law.'"

DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430

N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL

Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007), certif.

denied, 195 N.J. 419 (2008), overruled in part on other grounds

by Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558

(2012)). "We review issues of law de novo and accord no deference

to the trial judge's conclusions on issues of law." Ibid.

 A.

 We first address whether Chavez-Echeverry was acting within

the scope of his employment at the time of the accident. "Under

respondeat superior, an employer can be found liable for the

 6 A-3134-16T1
negligence of an employee causing injuries to third parties, if,

at the time of the occurrence, the employee was acting within the

scope of his or her employment." Carter v. Reynolds, 175 N.J.

402, 408-09 (2003) (emphasis omitted). "To establish a master's

liability for the acts of his servant, a plaintiff must prove (1)

that a master-servant relationship existed and (2) that the

tortious act of the servant occurred within the scope of that

employment." Id. at 409. We consider conduct within the scope

of employment when "(a) it is of the kind he is employed to

perform; (b) it occurs substantially within the authorized time

and space limits; [and] (c) it is actuated, at least in part, by

a purpose to serve the master . . . ." Restatement (Second) of

Agency § 228 (1958).

 "Generally, an employee who is 'going to' or 'coming from'

his or her place of employment is not considered to be acting

within the scope of employment." Carter, supra, 175 N.J. at 412.

However, there is a "dual purpose" exception covering "cases in

which, at the time of the employee's negligence, he or she can be

said to be serving an interest of the employer along with a

personal interest." Id. at 414. "[W]here the instrumentality

being used by the servant is owned by the master, such use raises

a rebuttable presumption that the servant was acting within the

 7 A-3134-16T1
scope of employment." Gilborges v. Wallace, 78 N.J. 342, 351-52

(1978).

 Here, the parties do not dispute there was an employer-

employee relationship between defendants and Chavez-Echeverry

satisfying the first requirement of respondeat superior. The

parties do dispute whether the tortious conduct of Chavez-

Echeverry occurred within the scope of his employment.

 Plaintiffs argue Chavez-Echeverry's conduct at the time of

the accident falls under the dual purpose exception and was

therefore within the scope of his employment, the second

requirement of respondeat superior. Chavez-Echeverry was enroute

to fill a dealership car with gas when he decided to stop at his

house to lock his door. The language of the Restatement supports

allowing the dual purpose exception in this case, stating the

employee's conduct must be "actuated, at least in part, by a

purpose to serve the master . . . ." Restatement (Second) of

Agency § 228(c) (1958) (emphasis added).

 The parties dispute whether defendants permitted Chavez-

Echeverry to get gas at the station near his home. Viewing the

facts in the light most favorable to plaintiffs, a reasonable jury

could find Chavez-Echeverry had the dual purpose of filling the

dealership car with gas and going home to lock his door when the

accident occurred. Based on the record before it, the motion

 8 A-3134-16T1
court ignored genuine issues of material fact and mistakenly

decided the issue of respondent superior as a matter of law.

 B.

 We next address whether defendants negligently hired or

retained Chavez-Echeverry. The related doctrines of negligent

hiring, supervision, and retention are distinct and broader forms

of liability than under the doctrine of respondeat superior. Di

Cosala v. Kay, 91 N.J. 159, 174 (1982); Lingar v. Live-In

Companions, Inc., 300 N.J. Super. 22, 29-30 (App. Div. 1997).

Significantly, these theories do not require that an employee's

tortious conduct occur within the scope of his or her employment.

Johnson v. Usdin Louis Co., 248 N.J. Super. 525, 528 (App. Div.),

certif. denied, 126 N.J. 386 (1991). Rather, the basis for

liability stems from the principle that "[a]n employer whose

employees are brought into contact with members of the public in

the course of their employment is responsible for exercising a

duty of reasonable care in the selection or retention of its

employees." Di Cosala, supra, 91 N.J. at 170-71; Lingar, supra,

300 N.J. Super. at 30.

 Under a negligent retention theory,

 the question presented is whether the
 employer, knowing of its employee's unfitness,
 incompetence or dangerous attributes when it
 hired or retained its employee, should have
 reasonably foreseen the likelihood that the

 9 A-3134-16T1
 employee through his employment would come
 into contact with members of the public, such
 as plaintiff, under circumstances that would
 create a risk of danger to such persons
 because of the employee's qualities.

 [Di Cosala, supra, 91 N.J. at 177.]

 There are two general showings that a plaintiff must make to

impose liability under these theories. First, the employer must

have known or had reason to know "of the employee's dangerous

characteristics and the reasonable foreseeability of harm to other

persons as a result of these qualities." Ibid.; Johnson, supra,

248 N.J. Super. at 528. Second, a plaintiff must show proximate

causation, meaning the injury to the particular plaintiff was

foreseeable by the employer. Ibid. A plaintiff will recover only

when a duty owed to the injured third-party can be established in

law and the breach of said duty can be proven in fact. Johnson,

supra, 248 N.J. Super. at 529.

 Whether a duty exists is a matter of law, Kernan v. One

Washington Park Urban Renewal Assocs., 154 N.J. 437, 445 (1998),

that poses "a question of fairness" involving "a weighing of the

relationship of the parties, the nature of the risk, and the public

interest in the proposed solution." Kelly v. Gwinnell, 96 N.J.

538, 544 (1984) (quoting Goldberg v. Hous. Auth. of Newark, 38

N.J. 578, 583 (1962)). In reviewing a trial court's determination

that a duty does or does not arise in a particular situation, we

 10 A-3134-16T1
are not bound by the court's interpretation of the law or the

court's view of the legal consequences of the alleged facts.

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366,

378 (1995).

 The duty analysis is "rather complex." J.S. v. R.T.H., 155

N.J. 330, 337 (1998). "[I]n its determination whether to impose

a duty, [a court] must also consider the scope or boundaries of

that duty." Id. at 339. Moreover, the court must recognize "the

more fundamental question whether plaintiff's interests are

entitled to legal protection against defendant's conduct." Id.

at 338 (quoting Weinberg v. Dinger, 106 N.J. 469, 484-85 (1987)).

However, underlying factual determinations are necessary to make

that assessment, including "the relationships between and among

the parties, . . . an assessment of the defendant's 'responsibility

for conditions creating the risk of harm,' and an analysis of

whether the defendant had sufficient control, opportunity, and

ability to have avoided the risk of harm." Id. at 338-39 (quoting

Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 574 (1996)).

 Here, the question is whether it is fair to impose a duty on

defendants to protect third parties such as plaintiff. Defendants'

supervising personnel acknowledged the desirability of not

allowing employees with unsafe driving records or other problems

to drive dealership vehicles on public roads. Defendants provided

 11 A-3134-16T1
Chavez-Echeverry with access to a dealership car and permission

to drive on public roads. Defendants' ability to access Chavez-

Echeverry's driving record and personnel file provided them with

the means to confirm whether it was safe and reasonable to allow

Chavez-Echeverry to drive dealership vehicles. Under the facts

and circumstances presented here, we conclude it is fair to impose

a duty on defendants to protect third parties such as plaintiff

from employees who are unsafe drivers. Therefore we conclude

defendants owed a duty to take reasonable steps to ensure Chavez-

Echeverry was a safe driver.

 Defendants arguably breached this duty because of Chavez-

Echeverry's poor driving record, and reports of his

insubordination and on-the-job drinking. A jury could reasonably

find that defendants breached their duty of care by giving Chavez-

Echeverry access to dealership cars, and that this breach was a

proximate cause of the accident under review. Viewing the facts

in the light most favorable to plaintiff, a reasonable jury could

find defendants knew or should have known of Chavez-Echeverry's

poor driving record, and reports of his insubordination and on-

the-job drinking, which should have alerted defendants to the

compelling need to promptly review and investigate whether they

should continue to allow Chavez-Echeverry to drive dealership

vehicles. Viewing the facts in the light most favorable to

 12 A-3134-16T1
plaintiffs, a reasonable jury could find it was foreseeable that

Chavez-Echeverry would take an unauthorized trip in a dealership

car causing a motor vehicle accident injuring a third party, such

as plaintiff, therefore establishing proximate cause. The trial

court erred in finding, as a matter of law, that defendants

breached no duty to plaintiff regarding Chavez-Echeverry's unsafe

driving.

 Reversed and remanded. We do not retain jurisdiction.

 13 A-3134-16T1