ROSEMARIE GILBORGES, AN INCOMPETENT, BY HER GUARDIANS *AD LITEM* ROSE M. GILBORGES AND ALBERT T. GILBORGES, PLAINTIFFS-APPELLANTS, v. JOHN WALLACE, DEFENDANT, AND CROSS COUNTRY EXPRESS, INC., DEFENDANT-RESPONDENT, AND LINDA A. GIANNINI AND BOARD OF EDUCATION, TOWNSHIP OF MAPLE SHADE, ETC., DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.

JOHN WALLACE, THIRD-PARTY PLAINTIFF, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, *ET AL.*, THIRD-PARTY DEFENDANTS.

Argued October 30, 1978—Decided December 18, 1978.

*Mr. Peter N. Perretti, Jr.* argued the cause for appellants (*Messrs. Friedman & Tighe,* attorneys and *Messrs. Riker, Danzig, Scherer & Debevoise,* attorneys; *Mr. Perretti* and *Mr. Howard P. Shaw,* of counsel and on the briefs).

Mr. *Edgar E. Moss, II* argued the cause for cross-appellant Giannini (*Messrs. Moss, Powell & Powers,* attorneys; *Mr. Moss,* of counsel; *Mr. Philip R. Lezenby, Jr.,* on the briefs).

Mr. *Richard D. Catenacci* argued the cause for cross-appellant Board of Education, Township of Maple Shade (*Messrs. Connell, Foley & Geiser,* attorneys; *Mr. Theodore W. Geiser,* of counsel).

Mr. *G. Wesley Manuel, Jr.* argued the cause for respondent (*Messrs. Montano, Summers, Mullen & Manuel,* attorneys; *Mr. Robert T. Zane, III,* on the brief).

The opinion of the court was delivered by

SULLIVAN, J. Plaintiffs appeal as of right from the Appellate Division reversal of a judgment of $1,000,000 in damages entered in their favor in an automobile accident case.

Plaintiff Rosemarie Gilborges suffered serious brain damage and other injuries on December 7, 1973 when the car in which she was riding as a passenger collided with a pickup truck. A jury awarded $1,000,000 in damages against (1) Linda Giannini, the driver of the host car, who was found to be 20% negligent; (2) John Wallace the driver of the pickup truck, who was found to be 80% negligent; and (3) Maple Shade Board of Education which, prior to the trial, had been held as a matter of law to be responsible for Linda Giannini's driving on grounds of agency.

Cross Country Express, Inc., the owner of the pick-up truck and the employer of John Wallace, had been sued by plaintiffs and cross-claimed against by defendant Giannini. However, its motion for involuntary dismissal, made during trial, was granted on the ground that as a matter of law Wallace was not acting as the agent for Cross Country when the accident occurred.

Following the trial, defendant Giannini moved for judgment on her cross-claim for indemnification against defendant Board of Education. The trial judge denied the motion holding that the statute relied on by Giannini, *N. J. S. A.* 18A:16–6,[1] did not apply to the factual situation here involved.

Defendant Board of Education filed a notice of appeal from the judgment and defendants Giannini and Wallace filed cross-appeals. The Appellate Division, one judge dissenting, reversed in part in an opinion reported at 153 *N. J. Super.* 121 (1977). The majority upheld the jury's findings as to negligence and the degree thereof on the part of defendants Giannini and Wallace. It sustained the dismissal of the complaint and cross-claim against Cross Country and the denial of defendant Giannini's motion for judgment of indemnification against defendant Board of Education.

However, the majority Appellate Division opinion reversed the award of $1,000,000 in damages and remanded this issue for a new trial on the ground that the summation by plaintiffs' attorney was in gross violation of standards enunciated in *Botta v. Brunner,* 26 *N. J.* 82 (1958). It also ruled that the trial judge erred in holding that, as a matter of law, defendant Giannini was acting as agent of defendant Board of Education in her operation of the car at the time of the accident. Based on the factual situation presented, the Appellate Division concluded that this issue should have been submitted to the jury.

The majority also concluded that the admission of actuarial expert testimony by Mr. Goodfarb on behalf of plaintiffs was proper under the circumstances. As to Dr. Leshner, an expert called by plaintiffs to establish Rosemarie's potential

---

[1] *N. J. S. A.* 18A:16–6 provides, in substance, that boards of education shall indemnify their officers and employees, including student teachers, against civil actions arising out of the performance of duties.

loss of earnings by reason of her injuries, the majority held that his opinion that Rosemarie would probably have become a practicing veterinarian was without evidential foundation and should have been excluded. However, the Appellate Division did find a sufficient basis for Dr. Leshner's opinion that Rosemarie would probably have become a college graduate and held that his testimony on that matter was properly submitted to the jury.

The dissenting Appellate Division judge stated that he shared his colleagues' "uneasiness" about the judgment under review. He agreed that the summation by plaintiffs' attorney seemed to run afoul of *Botta,* but concluded that it did not reach the magnitude of plain error, particularly since defense counsel made no objection to the summation at the time.

The dissenting judge would have allowed the summary judgment as to agency between defendant Giannini and defendant Board of Education to stand, not on the factual basis relied on by the trial judge, but rather because the Board of Education should be deemed to have admitted agency under *R.* 4:22–1 since it had failed to deny "within 30 days" a request for an admission of agency served upon it. He concluded that the Board's belated denial of agency which was 30 days out of time was ineffective. He also found no prejudicial error in the admission of testimony as to Rosemarie's prospective loss of earnings based on the assumption that she would have become a veterinarian. The dissenting opinion did not address the summary judgment in favor of defendant Cross Country except to state that the judgment below should be affirmed.

We are in substantial agreement with the majority opinion of the Appellate Division except for its affirmance of the summary judgment in favor of defendant Cross Country. As to that issue, we conclude that a jury question was presented.

Preliminarily, however, we address a contention made by Cross Country that any issue as to its liability is not

properly before this Court since the Appellate Division unanimously affirmed the dismissal of the complaint and cross-claim against Cross Country. It contends that plaintiffs' appeal as of right under *R.* 2 :2–1(a)(2) is limited only to those issues encompassed by the Appellate Division dissent. Moreover, it argues that since plaintiffs did not appeal to the Appellate Division from the dismissal of the complaint as to Cross Country they may not raise the issue at this time. On this basis Cross Country has moved for a dismissal of the appeal as to it. This motion is denied for the reasons now set forth.

■ We have held previously that where there is a dissent in the Appellate Division, an appeal or cross-appeal may raise any issue argued below and is not limited to the matter or matters encompassed by the dissent. *Fortugno Realty Co. v. Schiavone-Bonomo Corp.,* 39 *N. J.* 382, 386–388 (1963); *Sorokach v. Trusewich,* 13 *N. J.* 363, 368 (1953). The rationale of these holdings is that the *New Jersey Constitution* (1947), Art. VI, § V, par. 1(b), which provides that appeals may be taken to the Supreme Court "[i]n causes where there is a dissent in the Appellate Division of the Superior Court," confers a right of appeal unlimited in scope.

We conclude that the constitutional provision is not so broad and although it allows appeal as a matter of right where there is a dissent in the Appellate Division, the scope of the appeal (absent other considerations) is limited to those issues encompassed by the dissent. To that extent, we find that *Sorokach* and *Fortugno* were decided on too broad a basis. Two recent decisions by this Court, *Malloy v. State,* 76 *N. J.* 515, 522 n. 2 (1978) and *State v. Garfole,* 76 *N. J.* 445, 447 (1978) questioned whether an appeal as of right by virtue of a dissent in the Appellate Division permitted the raising of an issue which was not the subject of the dissent. We now hold that it does not and that the proper procedure is to file a petition for certification as to such issue.

In the instant case, since Cross Country's status is so vital to a proper disposition of plaintiffs' claim, we will treat plaintiffs' notice of appeal and brief as a petition for certification and grant same. It is of no moment that plaintiffs, who prevailed generally at trial, did not see fit to raise this issue before the Appellate Division. Defendant Giannini on her cross-appeal to that court challenged the trial judge's ruling in favor of Cross Country and the Appellate Division ruled on the question.

We now consider the propriety of the involuntary dismissal in favor of Cross Country. The proofs showed that defendant Wallace was employed by Cross Country as an over-the-road truck driver. The day before the accident he had returned to the Cross Country terminal some time in the afternoon, having been on the road for two weeks. He was told by Joseph Koenig, the president and co-owner of Cross Country, that he was to drive to Trenton the following day for a load "to go west." This required him to be at the terminal the next morning to pick up a tractor and an empty trailer and drive to Trenton where the trailer was to be loaded for the trip west.

Desirous of going home and getting cleaned up, Wallace telephoned his wife in Royersford, Pennsylvania, approximately 30-40 miles away, and asked her to drive him home from the terminal, as she usually did. However, the family car was being repaired, and his wife was unable to come for him. Wallace then asked Mr. Koenig whether there was any means of transportation available for him to get home, saying he was dirty and needed to clean up and get fresh clothing if he was to make the next day's trip west. Koenig suggested that Wallace use the Cross Country pick-up truck and gave him the ignition key and a set of license plates to use on the truck. Koenig also asked Wallace when he would be back so that "they would have my truck ready to go out." Wallace drove home in the pick-up truck. The next morning on his way back to the terminal he was involved in the accident with the Giannini vehicle.

Wallace testified that on many occasions he had used Cross Country vehicles to drive home and that his normal practice when he picked up a load for western delivery was to stop off at his home overnight and park the tractor trailer at or near his house. He testified that on December 7, 1973, the date of the accident, having returned to the terminal too late to handle the Trenton assignment, he was given another delivery to make and took the loaded truck home where he stayed overnight.

Koenig denied that he had given Wallace permission to use the pick-up truck. He testified that, as far as he knew, the truck was inoperable and that he did not even have an ignition key for it.

The trial judge, in granting Cross Country's motion, found that Wallace was not pursuing his duties as an employee and was not in any sense furthering the purposes of his master's business. We conclude that this ruling, affirmed by the Appellate Division, was erroneous and that a jury issue existed as to whether Wallace, at the time, was furthering the business of his employer.

■ A master is not liable for harm caused by a servant in the use of an instrumentality owned by the master when such use is not within the servant's scope of employment. 1 *Restatement, Agency* 2d, § 238 at 526 (1958). He is liable only if at time of the accident "the instrumentality is being used by the servant for the purpose of advancing the employer's business or interests, as distinguished from the private affairs of the servant." *Id.,* comment b; *Krolak v. Chicago Express, Inc.,* 10 *N. J. Super.* 60, 64 (App. Div. 1950).

■ However, this State has adopted the "dual purpose" rule so that where the trip serves the servant's private affairs and also is in furtherance of the master's business, the master is subject to liability for the servant's actions. *Cinque v. Crown Oil Corp.,* 135 *N. J. L.* 38, 40–41 (E. & A. 1946); 1 *Restatement, Agency* 2d, § 236 at 523 (1958). Also, where the instrumentality being used by the servant is owned by

the master, such use raises a rebuttable presumption that the servant was acting within the scope of employment. *Cucci v. Jaldini,* 141 *N. J. Super.* 297, 300 (App. Div. 1976).

■ Applying the foregoing principles to the evidence presented at trial, and viewing the same in the light most favorable to plaintiffs, we conclude that reasonable minds could differ as to whether Wallace's trip to and from his home prior to the accident served a dual purpose, one being the advancement of the employer's business. This issue, therefore, should have been presented to the jury.

■ The Appellate Division was unanimous in its affirmance of the trial court's ruling denying defendant Giannini's motion for indemnification against defendant Board of Education. The statute relied on by Giannini, *N. J. S. A.* 18A:16–6, provided at the time as follows:

Whenever any civil action has been or shall be. brought against any person holding any office, position or employment under the jurisdiction of any board of education, including any student teacher, for any act or omission arising out of and in the course of the performance of the duties of such office, position, employment or student teaching, the board shall defray all costs of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, and shall save harmless and protect such person from any financial loss resulting therefrom; and said board may arrange for and maintain appropriate insurance to cover all such damages, losses and expenses.

[L. 1967, c. 167]

The trial judge held that except for student teachers, the statute did not provide for indemnification of students even though engaged in school activities. We are in accord with this ruling. The statute, originally enacted to protect only teachers, has been expanded to cover all school employees when acting within the scope of their employment. However, we do not understand the legislative intent as expressed in the statute to provide indemnification to non-employees of a board of education even though some agency relationship may exist. In the circumstances presented, we conclude that the Giannini motion was properly denied.

We agree with the Appellate Division majority ruling regarding the admissibility of the testimony of Dr. Leshner. His opinion that Rosemarie would probably have become a practicing veterinarian was based on almost pure speculation. At the retrial, such evidence should be excluded unless plaintiffs establish some evidentiary basis for such an opinion.

We also agree with the majority holding that the summation to the jury by plaintiffs' counsel clearly violated guidelines set forth in *Botta v. Brunner, supra,* 26 *N. J.* at 99–103. However, we do so without giving consideration to supplemental material contained in the appendix submitted to the Appellate Division by defendant Board. In *Botta* we held that it was improper for counsel, in the opening or closing statement to the jury, to suggest, directly or indirectly, per hour or per diem sums as the value of, or as compensation for, pain, suffering and kindred elements associated with injury and disability. We held that suggestions such as this "import into the trial elements of sheer speculation on a matter which by universal understanding is not susceptible of evaluation on any such basis." *Id.* at 100. As pointed out by the Appellate Division, this is exactly what plaintiffs' counsel did to the prejudice of defendants' rights to have a fair assessment of damages once liability was found to exist. We note, also, that counsel for plaintiffs, in his summation, on two occasions referred to compensation for the loss sustained by Rosemarie's parents. On one of them the jury was told that Rosemarie was the only child of hardworking people. He then said, "They have only one child. Do you know how much that means? Do you know how much that's worth? Can you count it?" These remarks were improper since the only claim of damages involved was on behalf of Rosemarie.

Plaintiffs' contention, made for the first time on the appeal to this Court, that defendant Board's duty to Rosemarie was nondelegable, misses the point. The issue was whether the activities in which Rosemarie and defendant Giannini were engaged were within the Board's area of

responsibility so that it could be said that Linda was acting as an agent of the Board at the time. The Appellate Division held that in the factual situation presented this was a jury issue, and we agree.

We therefore affirm the Appellate Division judgment in all respects except for its affirmance of the involuntary dismissal as to defendant Cross Country. As to this defendant, the issue of its liability on grounds of agency should be submitted to the jury on the retrial. No costs.

*For affirmance in part and for reversal and remandment as to defendant Cross Country*—Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*Opposed*—None.