783 A.2d 724 (2001)
345 N.J. Super. 67
David CARTER and Donna Carter, Plaintiffs-Respondents,
v.
Alice F. REYNOLDS and Stevens, Fluhr, Chismar, Alvino & Schechter, CPA, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Submitted October 1, 2001.
Decided November 2, 2001.
*725 Gercke, Dumser, Shoemaker & Sierzega, attorneys for appellant, Stevens, Fluhr, Chismar, Alvino & Schechter (Mr. Dumser on the brief).
Margolis, Edelstein, Westmont, attorneys for appellant, Alice F. Reynolds, joined in the brief of appellant Stevens, Fluhr, Chismar, Alvino & Schechter.
Tomar, O'Brien, Kaplan, Jacoby & Graziano, attorneys for respondents, (Alan H. Sklarsky, Cherry Hill, on the brief).
Before Judges BRAITHWAITE, COBURN, and WEISSBARD.
The opinion of the court was delivered by WEISSBARD, J.A.D.
The doctrine known as respondeat superior has been said to be "one of the few anomalies to the general tort doctrine of no liability without fault." Fruit v. Schreiner, 502 P.2d 133, 139 (Alaska 1972). Here we must address, in a different factual context, the ground covered recently in several opinions of this court. See Pfender v. Torres, 336 N.J.Super. 379, 765 A.2d 208 (App.Div.), certif. denied, 167 N.J. 637, 772 A.2d 938 (2001); Mannes v. Healey, 306 N.J.Super. 351, 703 A.2d 944 (App.Div. 1997). The motion judge reversed an earlier ruling and granted partial summary judgment to plaintiffs David and Donna Carter, finding that defendant Alice F. Reynolds was acting within the scope of her employment for defendant Stevens, Fluhr, Chismar, Alvino & Schechter, CPA (Stevens), when she struck and injured David Carter while operating her automobile. We granted leave to appeal. Although our analysis differs from that of the motion judge, we agree with her conclusion and affirm.
The important facts are quite simple. On January 15, 1997, Reynolds was operating her 1992 Buick Regal when she was involved in a one-car accident that resulted in serious injuries to David Carter.[1] At the time of the accident, Carter was employed as a laborer foreman with Hinkels & McCoy, a utility construction company, working on Main Street in Belmar, installing gas services. As he walked around from the back of a construction truck to the road side, he was struck by Reynolds who was driving south on Main Street.
On the date of the accident, Reynolds was employed with the Stevens accounting firm as a part-time, nonprofessional employee.[2] Her job duties included verifying, checking, and preparing bank reconciliations, completing statistical and detail work, and preparing worksheets for the firm's accountants. Although Reynolds worked at the Stevens office in Neptune, where she had an assigned work space area, her job required her to make site visits to service clients and she was expected to use her own vehicle for those trips.
*726 Reynolds spent approximately sixty to seventy percent of her work time at the Neptune office, and approximately twenty-five to thirty percent of her time at clients' offices. Her workday normally began at 9:00 a.m. and she was free to leave when she finished her work. However, generally, the firms' employees, including Reynolds, were expected to work from 9:00 a.m. to 5:00 p.m. Reynolds was paid at an hourly rate and she was responsible for filling out biweekly time sheets.
In addition to her hourly salary, Reynolds was also reimbursed for mileage expenses for trips to clients' offices. According to Vincent Joseph Alvino, a partner with Stevens:
[Reynolds was] allowed to claim mileage from the [Neptune] office to the client assignment and from the client assignment back to the office and in the event that she was traveling from home, it would be the mileage from her home to the client or from the office to the client, whichever was closer, and that would also hold true for the return trip. If she was traveling from the client back home, she would get the shorter distance of the mileage from the client to home or the client to the office.
Stevens employees are also reimbursed travel time (as opposed to mileage) to and from a client's office when the employee is leaving from or returning to the Neptune office. However, employees are not reimbursed travel time to and from client offices when the employee is leaving from or returning to his or her home.
On January 15, 1997, Reynolds began her work day at the Stevens office in Neptune, spent two hours there, and then traveled to a client's office in Deal.[3] After finishing her work in Deal, Reynolds left and was driving home. According to the police report, the accident occurred at 4:29 p.m. Stevens paid Reynolds for an eight-hour day for January 15, 1997, based on the hours submitted on her time sheet.
Stevens claims that Reynolds was not acting within the scope of her employment at the time of the accident as she was simply commuting home after having finished her work for the day. The issue is simply framed but not as easily answered.
Generally, under the doctrine of respondeat superior, an employer is vicariously liable for the torts of an employee only if the employee was acting within the scope of his or her employment at the time the tort was committed. Di Cosala v. Kay, 91 N.J. 159, 168, 450 A.2d 508 (1982); Gilborges v. Wallace, 78 N.J. 342, 351, 396 A.2d 338 (1978); Wright v. Globe Porcelain Co., 72 N.J.Super. 414, 418, 179 A.2d 11 (App.Div.1962). However, as one court has noted, "many cases lying in the penumbras of `scope of employment' have produced confusing and contradictory legal results in the development of an otherwise worthy doctrine of law." Fruit v. Schreiner, supra, 502 P.2d at 140. An employee is acting within the scope of employment if the action is "`of the kind [that the servant] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master.'" Di Cosala, supra, 91 N.J. at 169, 450 A.2d 508 (quoting Restatement (Second) of Agency, § 228 (1957)).
*727 There can, of course, be situations where the employee's action, particularly in the use of a vehicle, can be said to serve the master's business as well as the employee's private affairs. Where such "dual purpose" is established, the master is liable. Gilborges, supra, 78 N.J. at 351, 396 A.2d 338. However, the general rule is that an employee driving his or her own vehicle to and from the employee's work place is not acting within the scope of employment for the purpose of imposing vicarious liability upon the employer for the negligence of the employee. Mannes v. Healey, supra, 306 N.J.Super. at 353-54, 703 A.2d 944.[4]
This "commuting" rule has been justified by the notion that the employee is not serving the employer while driving to or from the work place, id. at 354, 703 A.2d 944 (citing Hinman v. Westinghouse Elec. Co., 2 Cal.3d 956, 88 Cal.Rptr. 188, 471 P.2d 988, 990-91 (1970)), or by the fact that "the element of `control' by the employer is lacking." Ibid. (citing Jones v. Blair, 387 N.W.2d 349, 355 (Iowa 1986) and Logan v. Phillips, 891 S.W.2d 542, 545 (Mo.App.1995)).
The Mannes court took note of three exceptions to the general commuting rule, also sometimes referred to as the "going and coming" rule. Mannes, supra, 306 N.J.Super. at 354, 703 A.2d 944.[5] First, the court noted the "special errand or mission" exception. Ibid. (citing Burger Chef Sys., Inc. v. Govro, 407 F.2d 921, 927 (8th Cir.1969); Studebaker v. Nettie's Flower Garden, Inc., 842 S.W.2d 227, 229 (Mo.App.1992); Chevron, U.S.A., Inc. v. Lee, 847 S.W.2d 354, 356 (Tex.App.1993)). Second, the court discussed the situation where an employer requires the employee to drive his or her vehicle to work so that the vehicle is available for use in fulfilling the employee's work-related responsibilities. Ibid. (citing Oaks v. Connors, 339 Md. 24, 660 A.2d 423, 426-27 (1995)).
In Mannes, the defendant was driving her own vehicle from her home to her place of employment when she struck a pedestrian at 8:30 p.m. Id. at 352, 703 A.2d 944. The court declined to apply the "special mission" exception even though the defendant had an undefined and flexible nature of employment, which allowed the defendant to go to the office after regular business hours. Id. at 355, 703 A.2d 944. The court indicated that the flexibility benefitted the defendant more than the defendant's employer, and that the varying hours and unrestricted access to the employer's office underscored the absence of control by the employer. Ibid. The court also pointed out that the defendant operated her own car, and that the defendant's employer did not control the defendant's commute, the manner in which the defendant operated the car or the route of travel, or when the defendant chose to commute to the office for business purposes. Ibid. There was no indication in Mannes that the employer required the defendant to have a vehicle.
Pfender v. Torres, supra, on the other hand, found liability on the part of the employer under the "dual purpose" doctrine. Torres, who was employed by Don Rosen Imports, Inc. (DRI), drove over plaintiff's foot at a gas station. Id. at 383, 765 A.2d 208. At the time of the accident, *728 DRI, a car dealership, provided Torres with a car for business and personal use, but retained ownership of the vehicle. Id. at 393, 765 A.2d 208. At the time of the accident, Torres was driving to work and was not engaged in any work-related activity. Ibid. The salesmen were given the cars as an incentive to work for DRI and as a transportation necessity. Ibid. During work hours, DRI salesmen used these cars as demonstrators for customers and to run work-related errands. Ibid. The salesmen used the cars for personal use at all other times. Ibid. At all times the cars displayed DRI identification, and the company's general sales manager indicated that the dealership derived promotional and advertising benefits when the salesmen drove its vehicles. Ibid.
The Pfender court relied upon the exception to the coming and going rule, discussed in Mannes, in which an employer will be vicariously liable for the acts of its employee when it requires its employee to drive his or her vehicle to work so that the vehicle is available for the employee to carry out his or her work-related responsibilities. Id. at 394, 703 A.2d 944. The court stated that "DRI's liability under that well-recognized exception is clear since Torres was driving to work when the accident happened and he was required to use the car in the performance of his employment as a demonstrator to encourage sales and to run work-related errands." Ibid.
In this case, Pfender persuaded the motion judge to reverse her initial decision denying respondeat superior liability and to find Stevens liable for Reynolds' action. Pfender, however, was truly a clear example of a "dual purpose" situation. Here, Reynolds had completed her work for the day and was on her way home. Although it has a dual purpose ring to it, we believe this case fits most neatly within the exception, discussed in Mannes, covering the situations where the employee is required to have a vehicle available at work so that the vehicle can be used for regular off-site employment responsibilities. As we set out earlier, Reynolds was required to travel to clients' offices nearly a third of her work time. Clearly, she had to have her own vehicle available for such job-related activity.[6] Although no New Jersey case has touched upon this fact pattern, there is authority elsewhere that we find persuasive.
In Huntsinger v. Glass Containers Corp., 22 Cal.App.3d 803, 99 Cal.Rptr. 666, 668 (1972), Glass Containers Corporation employed Fell as a technical service representative. Among his primary duties was "consultation with customers, which involved daily liaison and contact with customers not only by telephone, but in person at the customers' plants as the need arose. Thus, Fell performed his duties both in the company office and in the field." Ibid. Fell drove his own pickup truck on these customer calls. Ibid. On the day of the accident, Fell had been at a customer's plant, but had returned to the office and was on his way home when the collision occurred. Ibid. The court found on these facts "ample evidence from which the jury might have concluded that Fell's *729 use of his vehicle was an implied or express condition of his employment." Id. at 669. The court found an exception to the "going and coming" rule. In disagreeing with the employer's contention "that Fell's trip from the office to his home during which the accident occurred did not involve any incidental benefit to it not common to commute trips by ordinary members of its work force," the court said, in language fully applicable here:
Presumably, ordinary members of respondent's work force would not be required to use their vehicles in company business and would not, therefore, be required to drive their vehicles to and from work. The means by which they travel to and from work is a matter of complete indifference to respondent. Not so with respect to Fell. Viewing the evidence most favorably to appellants, Fell was required to use his automobile in carrying out his employment duties. Obviously, this arrangement constituted a benefit to respondent. Unless Fell drove his vehicle to and from the office, he would not have it available for the beneficial use of respondent when it was needed. His driving his vehicle to and from the office was, therefore, incidentally beneficial to respondent in a manner not common to commute trips by ordinary members of its work force. In other words, when a business enterprise requires an employee to drive to and from its office in order to have his vehicle available for company business during the day, accidents on the way to or from the office are statistically certain to occur eventually, and, the business enterprise having required the driving to and from work, the risk of such accidents are risks incident to the business enterprise. We do not deal, of course, with a case in which the employee was not directly driving home but was engaged on some errand of his own.

[Id. at 671.]
In Mannes, the court noted that one of the reasons for the general rule of no respondeat superior liability while the employee is commuting to and from work is the absence of control by the employer. Certainly, in this case, there was no such control by Stevens over Reynolds' operation of her vehicle while driving home. We note, however, that the control element does not fit
"the modern justification for vicarious liability [which] is a rule of policy, a deliberate allocation of risk. The losses caused by the torts of the employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise which will, on the basis of past experience, involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large." (Prosser, Law of Torts (3d ed.1964) p. 471; fns. omitted.) Dean Prosser's citations suggest that the "modern" justification has been accepted for more than 50 years.[7]
Another leading authority also points out that the modern and proper basis of vicarious liability of the master is not his control or fault but the risks incident to his enterprise. "We are not here looking *730 for the master's fault but rather for risks that may fairly be regarded as typical of or broadly incidental to the enterprise he has undertaken. * * * Further, we are not looking for that which can and should reasonably be avoided, but with the more or less inevitable toll of a lawful enterprise." (2 Harper and James, The Law of Torts (1956) pp. 1376-1377; see also United States v. Romitti, (9th Cir.1966) 363 F.2d 662, 666 (applying California law).)
[Hinman v. Westinghouse Elec. Co., supra, 88 Cal.Rptr. 188, 471 P.2d at 990.]
Accord Fruit v. Schreiner, supra, 502 P.2d at 138-142; Beard v. Brown, supra, 616 P.2d at 738-744 (McClintock, J., dissenting); see also 2 Dan B. Bobbs, The Law of Torts § 334 at 907-10 (2001).
Stevens relies heavily on Oaks v. Connors, supra. In Oaks, the defendant worked for Giant Food, Inc., and was required to have a personal vehicle to use when travel between stores was necessary. Oaks, supra, 660 A.2d at 425. The defendant was traveling from home to his work assignment in the morning when he was involved in a car accident with the plaintiffs. Ibid. The defendant testified that he was not engaged in work activity at the time of the accident and that his work day began after he "punched in" at his work location. Ibid. Although the plaintiffs argued that Giant Food, Inc., was vicariously liable for the defendant's actions "because he was transporting to the job site a vehicle which Giant required him to have available for use in the course of his employment," the Maryland Supreme Court found in favor of Giant Food, Inc. Id. at 427. In reaching that result, the court stressed that the employer's right to control is a key element in a respondeat superior analysis involving employee use of motor vehicles. Id. at 426-27.
We do not agree with the result reached in Oaks, which reversed a contrary decision of the Maryland Court of Special Appeals. Connors v. Oaks, 100 Md.App. 525, 642 A.2d 245 (1994), rev'd, 339 Md. 24, 660 A.2d 423 (1995). For reasons expressed earlier, we cannot endorse the court's reliance upon the element of control, which in these circumstances is largely a fiction and not in accord with modern business practice. If an employee such as Oaks is required to have a car for use in fulfilling job responsibilities, the employee must get the car to work and, having done so, return it home so it is available for the next day. In that very real sense, the employee is furthering the employer's business both "coming and going," as the court explained in Huntsinger, supra. While the intermediate appellate court in Oaks would have found liability under the facts of the case because Oaks was driving to work, in dicta the court noted that it would not have found the employer responsible for an accident on the way home because "[o]nce an employee finishes the work day, an employer no longer has an interest in, or control over, the use of the employee's vehicle." Oaks, supra, 642 A.2d at 251. Of course, we do not agree with that statement for reasons discussed above.
We find that Reynolds was, on these facts, acting within the scope of her employment with Stevens, and, there being no material facts in dispute, partial summary judgment was properly granted on that issue.
Affirmed.
NOTES
[1] Donna Carter, David's wife, sues per quod. We will refer to the plaintiff simply as Carter.
[2] As a part-time employee, Reynolds did not normally work everyday; however, when she worked a particular day she would work a full day.
[3] Reynolds indicated in her first deposition that she arrived at the client's office in Deal on January 15, 1997, at 9:00 a.m. and left at 4:00 p.m. At her second deposition, Reynolds stated that she could not recall what time she started work on January 15, 1997. During the winter months, however, Reynolds sometimes began work at 8:00 a.m. and finished work at 4:00 p.m. in order to get home before dark.
[4] For a thorough discussion on all aspects of this issue, see Christopher Vaeth, Employer's Liability For Negligence of Employee in Driving His or Her Own Automobile, 27 A.L.R. 5th 174 (1995).
[5] This opinion discusses only two of the three exceptions. The third exception, which involves liability of an employer when an employee is "on call," has no possible application to this case. Mannes, 306 N.J.Super. at 354-55, 703 A.2d 944.
[6] The parties dispute whether Reynolds was receiving mileage reimbursement for her return trip home on January 15, 1997. While mileage or other travel reimbursement, or the lack thereof, might be an additional factor in some cases, see e.g., Hinman v. Westinghouse Elec. Co., 2 Cal.3d 956, 88 Cal.Rptr. 188, 471 P.2d 988 (1970); O'Brien v. Traders & Gen. Ins. Co., 136 So.2d 852, 856, 864 (La.App. 1961); Oaks v. Connors, supra, 660 A.2d at 425 n. 3; Beard v. Brown, 616 P.2d 726, 736 (Wyo.1980), we do not find mileage reimbursement to be helpful in arriving at a proper outcome in this case and we do not consider it in reaching our conclusion.
[7] The quotation from Prosser remains the same in the more recent edition. Prosser and Keeton, The Law of Torts, § 69 at 500-01 (Hornbook Series 5th Ed.1984).