786 A.2d 121 (2001)
345 N.J.Super 559
Adrienne L. O'TOOLE, Charles F. O'Toole, Plaintiffs-Respondents,
and
Sara O'Toole and Christine O'Toole, minors, through their parents and natural guardians, Charles and Adrienne O'Toole, Plaintiffs,
v.
Paul J. CARR, Defendant-Respondent,
and
Murray and Carr, Defendant-Appellant,
and
Borough of Tuckerton and Township of Eagleswood, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 2001.
Decided December 12, 2001.
*122 William P. Ford, New York City, argued the cause for appellant Murray and Carr (Ford Marrin Esposito Witmeyer & Gleser, attorneys; Mr. Ford and Mary Clare Gartland, of counsel; Mr. Ford, on the brief).
Kenneth R. Austin, Marlton, argued the cause for respondents Adrienne L. O'Toole and Charles F. O'Toole (Flynn, Austin & Associates, attorneys; Mr. Austin, on the brief).
Michelle A. Monte, Sea Girt, argued the cause for respondent Paul J. Carr (Monte, Sachs & Borowsky, attorneys; Ms. Monte, on the brief).
Before Judges CONLEY, LEFELT and LISA.
The opinion of the court was delivered by CONLEY, J.A.D.
This appeal is generated by an automobile accident caused by defendant Paul J. Carr while driving from his home to his municipal court judgeship employment. The accident victims sued not only Carr but the Murray and Carr law firm in which, at the time of the accident, Carr *123 was a partner.[1] The law firm's alleged liability was premised upon principles of agency and respondeat superior vicarious liability. On leave granted by the Supreme Court, the firm appeals a March 16, 2001, order granting plaintiffs' and Carr's motion for summary judgment. In granting the motion, the judge concluded as a matter of law that the law firm was vicariously liable for Carr's negligence.
Although recognizing that more modern approaches in other jurisdictions to respondeat superior liability might provide a basis for vicarious liability under the particular circumstances here, we are constrained to abide by what we believe to be the current law in New Jersey and reverse. Under our existing law, Carr's automobile negligence while driving to the location of his municipal court judgeship cannot be imputed to the private law practice of Murray and Carr.
Most of the particular circumstances are not in dispute. On January 8, 1998, the O'Tooles' vehicle was struck by Carr's vehicle on Route 9 in the Township of Eagleswood.[2] At the time of the accident, Carr was driving to the Tuckerton Municipal Court, where he presided as a part-time municipal judge. His car was leased. Lease payments, in addition to gas, tolls and other car expenses, were paid from Carr's corporate account. Income in this corporate account was derived from law firm disbursements after partnership overhead expenses were paid. No income, however, from Carr's judgeships, or Murray's (who also was a part-time municipal judge) judgeships, went into the partnership business account or their separate corporate accounts. Carr's vehicle was not leased in either the partnership or corporate name, but rather was leased by Carr in his personal capacity. The vehicle was insured by First Trenton Indemnity with bodily injury limits of $100,000 for each person and $300,000 for each accident. In contrast, the law firm had a million dollar automobile policy with CNA. The judge noted that plaintiffs had no underinsured motorists' coverage, thus enabling them to recover from either policy.
There are a few disputed facts. Carr had a portable cellular phone at the time of the accident which he had with him in the vehicle. Sometime before the accident, he claims to have made several law firm-related calls, one to his secretary to check his diary for the day and one or two to law firm clients. It was his deposition testimony that were it not for the accident, these clients would have been billed for the phone calls. Some question is raised as to the existence of the calls as phone bills purporting to be those of Carr's cell phone do not reflect the calls. The authenticity and accuracy of these records is disputed. Were there some basis for concluding that the accident occurred while Carr was engaged in one of the firm-related phone calls he claims to have made, the dispute of fact as to their existence might be critical. Carr, however, admitted in deposition testimony that he had finished the phone calls and was not on the cell phone at the time of the accident. There is no basis for concluding, therefore, that at the time of the accident, Carr was directly engaged in law firm business.
Nonetheless, the motion judge imposed vicarious liability upon the firm concluding that:

*124 [A]ny attorney who is also a municipal court judge even though the direct contributions may not be going back into the firm, there is a sufficient nexus and a sufficient benefit to that firm from that activity which inures to the benefit of all partners in that firm.... That is a sufficient connection so as to make [the law firm's] excess policy available for this accident.
....
That [Carr] was in fact on sufficient law firm business at the time of the event so as to be, "legally designated as an agent." To the extent that we need that designat[ion] to implicate the policy.
The judge acknowledged that he was "expanding the definition of agency to cover this activity."
The focus here is upon the "going and coming" or commuting anomalies that have been engrafted upon respondeat superior liability principles. See generally Christopher Vaeth, Annotation, Employer's Liability for Negligence of Employee in Driving His or Her Own Automobile, 27 A.L.R. 5th 174 (1995); Rhett B. Franklin, Pouring New Wine Into an Old Bottle: A Recommendation for Determining Liability of an Employer Under Respondeat Superior, 39 S.D. L.Rev. 570 (1994). A number of different tests have been employed by jurisdictions throughout the country to determine whether respondeat superior principles apply to commuting accidents so as to make the employer liable for the commuting employee's negligence. Ibid. By far, the most liberal is that utilized in California. Employing what has been referred to as an enterprise theory of liability,[3] California has concluded that "if the employee's trip to or from work `involves an incidental benefit to the employer, not common to commute trips made by ordinary members of the work force,' the `going and coming' rule will not apply." Henderson v. Adia Servs. Inc., 182 Cal.App.3d 1069, 227 Cal.Rptr. 745, 747-48 (1986) (quoting Hinman v. Westinghouse Elec. Co., 2 Cal. 3d 956, 88 Cal.Rptr. 188, 471 P.2d 988 (1970)). "Categorization of an employee's action as within or outside the scope of employment thus begins with a question of foreseeability, i.e., whether the accident is part of the inevitable toll of a lawful enterprise." Id. at 748. The enterprise theory inquires whether "in the context of the particular enterprise the employee's conduct was `so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business'." Id. at 749-50 (citation omitted). See also Alma W. v. Oakland Unified Sch. Dist., 123 Cal.App.3d 133, 176 Cal. Rptr. 287, 289 (1981). It is not some element of control by the employer that is seen as the basis for imposing vicarious liability "but [rather] because the employer's enterprise creates inevitable risks as a part of doing business." Bailey v. Filco, Inc., 48 Cal.App. *125 4th 1552, 56 Cal.Rptr.2d 333, 335 (1996). See also Potter v. Shaw, No. 991255, 2001 WL 914203, at *3 (Mass.Super. May 29, 2001) (applying California law).
In Potter v. Shaw, supra, for example, the employer was found liable for the negligence of its employees who were involved in a car accident while sightseeing on a "day off" during a business trip. Under California law, the court found that the sightseeing was not "so unusual or startling that it would seem unfair to include the [accident] among the other costs of [the employer's] business," id. at *4, and concluded that the employer would have anticipated or foreseen that its employees would utilize the "day off" by sightseeing or by doing other recreational activities. Ibid.
Applying this rationale here, it might be said that the law firm could have anticipated or foreseen that Carr would be engaged in commuting to the municipal court as both Murray and Carr were each part-time municipal judges. Indeed, the partnership was formed to provide a mechanism, primarily for accounting purposes, by which each could continue with their part-time municipal judgeships but also engage in their respective private practices. It was also understood that while commuting, each attorney might conduct some firm business with their cell phones. Carr's automobile negligence under these circumstances might not be "so unusual or startling that it would seem unfair to" impose liability upon the partnership as a risk of its enterprise.
We do not believe New Jersey's application of respondeat superior liability principles to "going and coming"/commuting circumstances has yet gone so far as the California approach. Fundamentally, the California enterprise liability eschews the scope of employment test set forth in the Restatement (Second) of Agency §§ 218, 228, 229 (1957). As described by one commentator: "Under [the enterprise liability theory], the reason for imposing vicarious liability on employers is because their businesses should bear the losses incidental to those enterprises. [On the other hand] [t]he [Restatement's] "scope of employment" test attempts to limit the reach of respondeat superior." Rhett B. Franklin, supra, 39 S.D.L.Rev. at 593 (footnotes omitted). Thus far, New Jersey follows the principles of the Restatement. Di Cosala v. Kay, 91 N.J. 159, 169, 450 A.2d 508 (1982); Mannes v. Healey, 306 N.J.Super. 351, 353, 703 A.2d 944 (App.Div.1997). See also Gilborges v. Wallace, 78 N.J. 342, 351, 396 A.2d 338 (1978).
Under the Restatement principles, an employer is vicariously liable for the torts of an employee if the employee was acting within the scope of his or her employment at the time the tort was committed. Di Cosala v. Kay, supra, 91 N.J. at 169, 450 A.2d 508. An employee is acting within the scope of employment if the action is "`of the kind [the employee] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master.'" Id. at 169, 450 A.2d 508 (quoting Restatement (Second) of Agency, § 228 (1957)).[4]
*126 Generally, the Restatement scope of employment principles do not recognize ordinary travel commute as within the scope of employment. "[A]n employee driving his or her own vehicle to and from the employee's workplace is not within the scope of employment for the purpose of imposing vicarious liability upon the employer for the negligence of the employee-driver." Mannes v. Healey, supra, 306 N.J.Super. at 353-54, 703 A.2d 944. Some courts ascribe this rule to the theory that "employment is suspended from the time the employee leaves the work-place until he or she returns, or that in traveling to and from work, the employee is not rendering service to the employer." Id. at 354, 703 A.2d 944.
We recognize a number of exceptions to the general rule that ordinary travel commute is not within the scope of employment. Where, at the time of the negligent conduct, the employee is serving an interest of the employer as well as his or her own private interest, a "dual purpose" is established and the employer is vicariously liable. Gilborges v. Wallace, supra, 78 N.J. at 351, 396 A.2d 338. Such liability will also be imposed when the employee can be considered to have been on a special errand or mission on behalf of the employer. Another exception exists where the employee is required to drive his or her vehicle to work so that the vehicle is available for work-related duties. Finally, where an employee is "on call" and becomes involved in an accident while, at the request of the employer, is traveling to a work site, respondeat superior liability will attach. Mannes v. Healey, supra, 306 N.J.Super. at 354-55, 703 A.2d 944.
Several recent cases are illustrative. Pfender v. Torres, 336 N.J.Super. 379, 392-94, 765 A.2d 208 (App.Div.), certif. denied, 167 N.J. 637, 772 A.2d 938 (2001), is an example of the employer required vehicle availability. There, defendant was a salesman for a car dealership which had provided its salesmen with vehicles for business as well as personal use, albeit retaining ownership. During working hours, the assigned vehicles were used for customer "demonstrators" and to run work-related errands. The vehicles so provided displayed the dealership's identification *127 and were considered to serve promotional and advertising benefits when used by the salesmen. At the time of the accident, defendant was driving to work and was not serving any particular purpose of the dealership. In, nonetheless, imposing vicarious liability upon the dealership, we said: "[The dealership's] liability under [the] well-recognized exception is clear since [defendant employee] was driving to work when the accident happened and he was required to use the car in the performance of his employment as a demonstrator to encourage sales and to run work-related errands." Id. at 394, 765 A.2d 208.
In Carter v. Reynolds, 345 N.J.Super. 67, 783 A.2d 724 (App.Div.2001), we concluded vicarious liability should be imputed to the employer for an auto accident that occurred when the employee was commuting home from work because the employee's employment responsibilities required her to have a vehicle at work for off-site client visits. We pointed out that at least a third of her work time was off-site. Id. at 74, 783 A.2d 724.
In contrast, we declined in Mannes v. Healey, supra, 306 N.J.Super. at 355, 703 A.2d 944, to impose vicarious liability under the special mission or special errand exception. There, defendant was driving her own vehicle from her home to her place of employment when she struck a pedestrian at 8:30 p.m. She had an undefined and flexible nature of employment which allowed her to go to the office after regular business hours. But we viewed this employment flexibility as an employee benefit, not a requirement of the job. Moreover, we noted that the varying hours and unrestricted access to the employer's office underscored the absence of control by the employer, often considered a necessary element of respondeat superior liability. Id. at 355, 703 A.2d 944. We also pointed out that defendant was using her own car and that the employer did not control the manner in which defendant operated her car, the route of travel or when she chose to commute to the office for business purposes. Ibid. All of these Restatement factors convinced us that the employee in Mannes was not acting within the scope of employment at the time of the accident and that none of the exceptions thereto applied.
We believe a similar result must be reached here under our existing respondeat superior law. To begin with, it would be violative of Canon 2 of the Code of Judicial Conduct[5] to say that Carr was serving any purpose of the law firm while commuting to his municipal judgeship position and thus the dual purpose exception does not apply. And, certainly he was not on a law firm special errand or mission. Neither does the record support a finding that the firm's practice required him to have a vehicle for off-site firm business. Finally, he was not in an "on-call" capacity.
We can, therefore, find no authority in New Jersey for imposing vicarious liability upon the law firm for Carr's auto negligence under the particular circumstances as they are reflected by the present record. We add the following brief comments. As we have said, were this jurisdiction to have adopted the enterprise liability approach that exists in California, the result might be different. We note, in this respect, that in Carter v. Reynolds, supra, we cited California precedent as "persuasive." Id. at 74, 783 A.2d 724. We also rejected the concept of employer control as a relevant factor. *128 Id. at 75, 783 A.2d 724. As we have previously said, the result in Carter is primarily guided by the employee-required vehicle exception that exists in our present law. The enterprise and control comments in Carter are, therefore, dicta. Moreover, to the extent Carter can be read to depart from the respondeat superior principles thus far applied in New Jersey and as depicted in Mannes, we decline to do so. We are an appellate court bound to follow the law as we believe it to be in this jurisdiction.
Until and unless our Supreme Court rejects the Restatement (Second) of Agency, §§ 218, 228, 229, as the appropriate governing principles for resolving respondeat superior liability issues in the "going and coming"/ commuting context or concludes that enterprise liability is consistent with the Restatement principles, we cannot expand those principles to encompass such liability. We, thus, conclude that the motion judge erred in imposing vicarious liability upon the law firm for Carr's negligence.
Reversed.
NOTES
[1] Actually, the law firm, a partnership, consisted of two corporate partners, Damian G. Murray, P.C., and Paul J. Carr, P.C. The law firm was dissolved following the accident.
[2] The plaintiff O'Toole children were passengers at the time. They have settled with Carr and are not involved in this appeal.
[3] The enterprise theory, has been described in the following fashion:

[w]hat has emerged as the modern justification for vicarious liability is a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise, which will on the basis of all past experience involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.
[W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, 499, 500-01 (5th ed.1984) (footnotes omitted).]
[4] The Restatement defines scope of employment in § 228 and describes the type of conduct which falls within that scope in § 229. § 228 states:

(a) it is of the kind he is employed to perform;
(b) it occurs substantially within the authorized time and space limits;
(c) it is actuated, at least in part, by a purpose to serve the master, and
(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.
§ 229 states:
(1) [t]o be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.
(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
(a) whether or not the act is one commonly done by such servants;
(b) the time, place and purpose of the act;
(c) the previous relations between the master and the servant;
(d) the extent to which the business of the master is apportioned between different servants;
(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
(f) whether or not the master has reason to expect that such an act will be done;
(g) the similarity in quality of the act done to the act authorized;
(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
(i) the extent of departure from the normal method of accomplishing an authorized result; and
(j) whether or not the act is seriously criminal.
[5] Canon 2 instructs, in part, that a "judge should not lend the prestige of office to advance the private interests of others...."