815 A.2d 471

ADRIENNE O'TOOLE AND CHARLES O'TOOLE, JR., H/W, PLAIN-TIFFS–APPELLANTS, AND CHRISTINE O'TOOLE AND SA-RAH O'TOOLE, MINORS, BY AND THROUGH THEIR FATHER AND GUARDIAN AD LITEM, CHARLES O'TOOLE, JR., PLAIN-TIFFS, v. PAUL J. CARR AND/OR JOHN DOE (FICTITIOUS NAME), DEFENDANT–APPELLANT, AND MURRAY AND CARR AND/OR JOHN DOE # 1–5 (FICTITIOUS NAME), DE-FENDANT–RESPONDENT,BOROUGH OF TUCKERTON AND/OR JOHN DOE # 6–15 (FICTITIOUS NAME), KATHERINE CARR AND/OR JANE DOE (FICTITIOUS NAME), TOYOTA MO-TOR CREDIT CORPORATION AND/OR JOHN DOE CORPORA-TION (FICTITIOUS NAME), TOWNSHIP OF EAGLESWOOD AND/OR JOHN DOE # 16–20 (FICTITIOUS NAME), RICHARD ROE (FICTITIOUS NAME) AND/OR RICHARD ROE COMPANY (FICTITIOUS NAME) AND/OR RICHARD ROE, INC. (FICTI-TIOUS NAME) INDIVIDUALLY, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS.

Argued November 18, 2002—Decided February 19, 2003.

*Kenneth R. Austin,* argued the cause for. appellants Adrienne O'Toole and Charles O'Toole, Jr., *(Flynn Austin & Associates,* attorneys).

*Michelle A. Monte* argued the cause for appellant Paul J. Carr *(Monte, Sachs & Borowsky,* attorneys).

*William P. Ford,* argued the cause for respondent *(Ford Marrin Esposito Witmeyer & Gleser,* attorneys; *Mr. Ford* and *Mary Clare Gartland,* of counsel).

## PER CURIAM.

■ Plaintiff, Adrienne L. O'Toole was injured in an automobile accident caused by defendant, Paul J. Carr, an attorney with the law firm of Murray & Carr. She sued Carr and the law firm. The facts surrounding the accident were described by the Appellate Division as follows:

> Most of the particular circumstances are not in dispute. On January 8, 1998, the O'Tooles' vehicle was struck by Carr's vehicle on Route 9 in the Township of Eagleswood. At the time of the accident, Carr was driving to the Tuckerton Municipal Court, where he presided as a part-time municipal judge. His car was leased. Lease payments, in addition to gas, tolls and other car expenses, were paid from Carr's corporate account. Income in this corporate account was derived from law firm disbursements after partnership overhead expenses were paid. No income, however, from Carr's judgeships, or Murray's (who also was a part-time municipal judge) judgeships, went in the partnership business account or their separate corporate accounts. Carr's vehicle was not leased in either the partnership or corporate name, but rather was leased by Carr in his personal capacity. The vehicle was insured by First Trenton Indemnity with bodily injury limits of $100,000 for each person and $300,000 for each accident. In contrast, the law firm had a million dollar automobile policy with CNA. The judge noted that plaintiffs had no underinsured motorists' coverage, thus enabling them to recover from either policy.
>
> There are a few disputed facts. Carr had a portable cellular phone at the time of the accident which he had with him in the vehicle. Sometime before the accident, he claims to have made several law firm-related calls, one to his secretary to check

his diary for the day and one or two to law firm clients. It was his deposition testimony that were it not for the accident, these clients would have been billed for the phone calls. Some question is raised as to the existence of the calls as phone bills purporting to be those of Carr's cell phone do not reflect the calls. The authenticity and accuracy of these records is disputed. Were there some basis for concluding that the accident occurred while Carr was engaged in one of the firm-related phone calls he claims to have made, the dispute of fact as to their existence might be critical. Carr, however, admitted in deposition testimony that he had finished the phone calls and was not on the cell phone at the time of the accident. There is no basis for concluding, therefore, that at the time of the accident, Carr was directly engaged in law firm business.

[*O'Toole v. Carr*, 345 *N.J.Super.* 559, 562–63, 786 *A.*2d 121 (App.Div.2001) (footnote omitted).]

On those facts, the trial court granted the motions for summary judgment filed by plaintiff and Carr, concluding, as a matter of law, that:

[As to] any attorney who is also a municipal court judge even though the direct contributions may not be going back into the firm, there is a sufficient nexus and a sufficient benefit to that firm from that activity which inures to the benefit of all partners in that firm.... That is a sufficient connection so as to make [the law firm's] excess policy available for this accident.

....

That [Carr] was in fact on sufficient law firm business at the time of the event so as to be, "legally designated as an agent." To the extent that we need that designat[ion] to implicate the policy.

[*Id.* at 564, 786 *A.*2d 121 (alteration in original).]

The Appellate Division reversed, determining that Carr's commute to his other job did not fall within any exception to the "going and coming rule":

To begin with, it would be violative of Canon 2 of the Code of Judicial Conduct to say that Carr was serving any purpose of the law firm while commuting to his municipal judgeship position and thus the dual purpose exception does not apply. And, certainly he was not on a law firm special errand or mission. Neither does the record support a finding that the firm's practice required him to have a vehicle for off-site firm business. Finally, he was not in an "on-call" capacity.

We can, therefore, find no authority in New Jersey for imposing vicarious liability upon the law firm for Carr's auto negligence under the particular circumstances as they are reflected in the present record.

[*Id.* at 570, 786 *A.*2d 121.]

We fully agree.

 We add only this. Plaintiff and Carr argue that we should consider the broad articulation of enterprise liability

adopted in California, which states that the " 'modern and proper basis of vicarious liability of the master is not his control or fault but the risks incident to his enterprise.' " *Huntsinger v. Fell*, 22 *Cal.App.*3d 803, 99 *Cal.Rptr.* 666, 668 (1972) (quoting *Hinman v. Westinghouse Elec. Co.*, 2 *Cal.*3d 956, 88 *Cal.Rptr.* 188, 471 *P.2d* 988, 990 (1970) (in bank)). In other words, " '[t]he losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business.' " *Ibid.* (quoting *Hinman, supra,* 88 *Cal.Rptr.* 188, 471 *P.2d* at 990 (quotation omitted)).

As we stated today in *Carter v. Reynolds*, 175 N.J. 402, 815 A.2d 460 (2002), we have thus far declined to adopt that view, retaining instead the Restatement as our vicarious liability standard. *Restatement (Second) of Agency* §§ 220, 228, 229 (1958). Further, even if we were inclined to adopt the broadest view of enterprise liability, it would not alter the outcome in this case. As Judge Conley noted, Carr's commutation to his job as a municipal court judge is, as a legal matter, unrelated to his law firm activity. Accordingly, the accident could in no event be considered a risk incident to that enterprise.

The judgment of the Appellate Division is affirmed substantially for the reasons expressed in Judge Conley's thorough and thoughtful opinion.

*For affirming*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.