**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0516-18T1

ARLENE L. SUMNER, as
Administratrix ad Prosequendum
of the ESTATE OF EDWINA
TIMBERLAKE, Deceased,
and on her own behalf,

      Plaintiff-Appellant,

v.

RIVERVIEW MEDICAL CENTER,
MERIDIAN HEALTH, INC.,
MERIDIAN HEALTH SYSTEM,
INC., and STEPHEN JUREWICZ,
M.D.,

      Defendants-Respondents,

and

MERIDIAN NURSING & REHAB
AT SHREWSBURY and PHILLIPA
G. WOODRIFFE, M.D.,

      Defendants.

_____

Argued October 24, 2019 – Decided June 2, 2020

Before Judges Alvarez, Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0037-15.

Randy Perry Davenport argued the cause for appellant.

Anthony William Liberatore argued the cause for respondents Riverview Medical Center, Meridian Health, Inc., and Meridian Health System, Inc. (Orlovsky, Moody, Schaaff, Conlon & Gabrysiak attorneys; Thomas Conlon and Anthony William Liberatore, on the brief).

Michael E. Mc Gann argued the cause for respondent Stephen Zurewicz, M.D. (Orlovsky Moody Schaaff Conlon & Gabrysiak, attorneys; Michael E. Mc Gann, on the brief).

PER CURIAM

Plaintiff Arlene Sumner as Administratrix Ad Prosequendum of the Estate of Edwina Timberlake appeals the August 20, 2018 summary judgment orders that dismissed her complaint against defendants Riverview Medical Center, Meridian Health, Inc., and Stephen Jurewicz, M.D.[1] The complaint alleged medical malpractice and fraud, claiming Dr. Jurewicz entered a "fraudulent . . . do not resuscitate order" on Edwina Timberlake's hospital chart, and that no action was taken to resuscitate her when she suffered a cardiac arrest.

---

[1] The complaint against defendants Meridian Nursing & Rehab at Shrewsbury and Phillipa G. Woodriffe, M.D. was dismissed, and has not been appealed.

Defendants' motions for summary judgment were granted because plaintiff did not provide an expert report to support her claims. We affirm the trial court's orders because this was not a common knowledge case and expert testimony was required.

I.

In 2012, Timberlake was eighty-two years old and a resident of defendant Meridian Nursing & Rehab at Shrewsbury. She suffered a severe stroke in 1986 and could not speak, using "body language, facial expressions and hand-gestures" to communicate. Plaintiff was attorney-in-fact for Timberlake. Dr. Jurewicz was Timberlake's primary physician.

In November 2012, Timberlake was admitted to Riverview Medical. She had abdominal surgery and suffered from other medical problems. She was discharged to the nursing home forty-five days later in stable condition. Plaintiff alleges that during the November 2012 admission she refused to authorize a "[d]o-not-resuscitate" (DNR) order for her mother. Dr. Jurewicz "responded" to her decision "with obvious hostility . . . ."

Timberlake was taken to the emergency department at Riverview Medical on December 29, 2012, where she was examined by Dr. Khaldoon Qumei. Timberlake presented with "decreased mental status, trouble concentrating." Dr.

A-0516-18T1

Qumei's differential diagnosis included "[stroke], electrolyte abnormality, hypoglycemia, intracranial bleed, sepsis and [urinary tract infection]." The hospital records state that Dr. Qumei "had a detailed discussion with the patient and/or guardian" and noted "daughter requesting DNR." Dr. Qumei testified in his deposition that he physically typed that note and would not have done so unless it had been requested. Dr. Qumei's handwritten notes also stated "DNR."

Timberlake was admitted to Riverview Medical from its emergency department early the next day under the care of Dr. Jurewicz. His report about her admission reviewed Timberlake's chief complaint, medical history and listed his impressions. The medical plan was to "give general supportive care with IV antibiotics, respiratory treatments, blood sugar monitoring with insulin coverage." He stated in the report, "I discussed with the daughter who does not want to subject her to any life-sustaining or heroic interventions."

On January 2, 2013, a doctor at Riverview Medical inserted a "central line" in Timberlake's neck. She was found an hour and a half later not breathing and with no pulse or vital signs. Resuscitative efforts were not undertaken because, according to her medical chart, Timberlake was "DNR as per Dr. [T]halasilla." Within five minutes, the attending doctor pronounced her death.

4

An autopsy report concluded Timberlake's cause of death was cardiovascular disease with "recent coronary artery thrombus and marked myocardial infarction." She had a large clot ("marked, occlusive thrombus") in the left anterior descending artery of her heart. Her other medical conditions included congestive heart failure, residual-bilateral pneumonia and a kidney infection with abscesses.

Plaintiff filed a nine-count civil complaint against defendants in December 2014. Counts one through four alleged medical malpractice relating to Timberlake's November 2012 admission.[2] Counts five though nine alleged medical malpractice and fraud related to the DNR order, including a count for punitive damages.

Plaintiff served an Affidavit of Merit by a medical doctor who alleged "a reasonable probability" that defendants' "care, skill and knowledge . . . fell below accepted standards of medical care and outside of acceptable professional standards." Plaintiff was then required to serve an expert report by March 15, 2018, but did not do so.

Dr. Jurewicz served a report by Gary R. Weine, M.D., who opined that Dr. Jurewicz "did not deviate from the standard of care in his treatment of Ms.

---

[2] Plaintiff does not raise any issues related to the November 2012 admission.

Timberlake." He concluded "it is unlikely that Ms. Timberlake would have survived a cardiac arrest" and "it is unlikely that Ms. Timberlake would have survived this hospital admission." Given her medical conditions as presented from the records, Dr. Weine concluded they "would make the likelihood of successful resuscitation and survival to discharge highly unlikely."

Defendants filed motions for summary judgment, alleging plaintiff could not prove her claims without a medical expert because this was not a "common knowledge" case. Defendants contended plaintiff authorized the DNR order, which was consistent with emergency room records.

Plaintiff opposed the motions, contending she repeatedly told Dr. Jurewicz she did not want a DNR order for her mother, and he entered it anyway. Plaintiff claimed that "executives [of Riverview] admitted that there was no valid DNR order."

The trial court granted defendants' motions for summary judgment on August 20, 2018, and dismissed the complaint. In its written statement of reasons, it concluded that the common knowledge doctrine did not apply. Without an expert, plaintiff did not show how Dr. Jurewicz's "actions fell below the standard of care surrounding the entering of a DNR order . . . ." The trial court also found plaintiff did not make a showing of causation because she did

6

not rebut the opinion by Dr. Weine that Timberlake would not have survived the cardiac arrest because of her medical conditions, even if there were not a DNR order. The trial court dismissed the Riverview defendants, finding that respondeat superior did not apply once Dr. Jurewicz was dismissed.

On appeal, plaintiff argues:

> POINT I.
>
> THE MOTION COURT ERRONEOUSLY CONCLUDED THAT EXPERT TESTIMONY IS NECESSARY TO PROVE MEDICAL MALPRACTICE IN THIS MATTER BECAUSE THE ASSERTED NEGLIGENCE OF ENTERING A FRAUDULENT DNR IS CONDUCT SO OBVIOUSLY WANTING IN REASONABLE MEDICAL SKILL AND PRUDENCE THAT IT MAY BE SO ADJUDGED EVEN BY A LAYMAN.
>
> POINT II.
>
> THE MOTION COURT ERRONEOUSLY CONCLUDED THAT EXPERT TESTIMONY IS REQUIRED AS TO THE ISSUE OF WHETHER PLAINTIFF HAS SUSTAINED DAMAGES CAUSED BY DEFENDANT-APPELLEE JUREWICZ'S COUDUCT [sic].

## II.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted if "the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

In a medical malpractice action, a plaintiff must present expert testimony from a "competent and qualified" physician to establish (1) "the applicable standard of care"; (2) a "deviation from that standard"; and (3) that the "deviation proximately caused injury . . . ." Lanzet v. Greenberg, 126 N.J. 168, 194-95 (1991) (Pollock, J., dissenting). The only exception involves cases of "common knowledge." Id. at 196.

Common knowledge cases are "exceptionally rare cases in which . . . an expert is not needed to demonstrate that a defendant professional breached some duty of care 'where the carelessness of the defendant is readily apparent to anyone of average intelligence.'" Cowley v. Virtua Health Sys., __ N.J. __, __ (2020) (slip op. at 15) (quoting Rosenberg v. Cahill, 99 N.J. 318, 325 (1985)). In a common knowledge case, "the 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized

knowledge of experts.'" Ibid. (quoting Hubbard ex. rel. Hubbard v. Reed, 168 N.J. 387, 394 (2001)). The common knowledge exception applies where "the issue of negligence is not related to technical matters peculiarly within the knowledge of . . . [the licensed] practitioner[ ]." Sanzari v. Rosenfeld, 34 N.J. 128, 142 (1961). It "allows jurors to 'supply the applicable standard of care . . . to obviate the necessity for expert testimony relative thereto.'" Cowley, __ N.J. at __ (slip op. at 19) (alteration in original) (quoting Sanzari, 34 N.J. at 141).

This is not a common knowledge case. Although plaintiff alleges the DNR order was "fraudulent" because it was entered by Dr. Jurewicz against her wishes, she assumes the standard of care for the entry of the DNR order in this context had to equate with her wishes. We simply do not know that. In this case, Dr. Qumei, who is not a defendant, testified in his deposition that he had a conversation with plaintiff, who expressed to him she wanted a DNR for her mother. The emergency room records reflected this. Timberlake was admitted to the hospital that night. Dr. Jurewicz claims he had a conversation with plaintiff in which she wanted a DNR order for her mother. In this case where the unchallenged emergency room records reflect a DNR order, we do not know what protocols were or should have been involved in establishing the DNR order, what procedures should have been followed for the DNR order upon

admission from the emergency department, what processes should have been followed, how Timberlake's health conditions and comorbidities did or did not factor into this decision, and how Dr. Jurewicz deviated from these standards. Plaintiff provided us with no supporting information or authority for her argument that a jury would know the standards to apply, without an expert to inform them, or how the doctor and hospital deviated from these standards.

Bender v. Walgreen Eastern Company, 399 N.J. Super. 584 (App. Div. 2008), cited by plaintiff, is not controlling. That case involved a prescription that was filled with the wrong drug. Those are not the facts here.

Other common knowledge cases are factually dissimilar from this case. See Estate of Chin ex rel. Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 470-71 (1999) (patient died from air embolism after incorrect hook-up of hysteroscope); Klimko v. Rose, 84 N.J. 496, 505 (1980) (providing "common knowledge could allow a jury to find that a reasonably prudent chiropractor should have known that there was a risk involved in repeating the further neck adjustment"); Jones v. Stess, 111 N.J. Super. 283, 289–90 (App. Div. 1970) (chiropodist accidentally cut skin of a diabetic's toe resulting infection and amputation); Steinke v. Bell, 32 N.J. Super. 67, 70 (App. Div. 1954) (dentist extracted wrong tooth).

Here, plaintiff also needed expert testimony to prove causation and damages. See Germann v. Matriss, 55 N.J. 193, 208 (1970) (providing a plaintiff who proves common knowledge still must prove "that the deviation was the reasonably probable cause of the injurious condition").

Timberlake had multiple co-morbidities according to Dr. Weine, which "included Stage III renal insufficiency, bilateral bronchopneumonia, [congestive heart failure], severe anemia, malnutrition with low serum albumen, upper tract urinary infection caused by a multidrug resistant bacteria with multiple renal abscesses and structural abnormality (renal stones) and pulmonary insufficiency . . . ." She died of a cardiac arrest. Dr. Weine concluded Timberlake's medical conditions "would make the likelihood of successful resuscitation and survival to discharge highly unlikely." There is nothing in the record to rebut this. It was not within the jury's common knowledge whether decedent would survive if resuscitate efforts were undertaken, whether the DNR order increased the risk of harm to her or whether this was a substantial factor in her death. See Hake v. Manchester Twp., 98 N.J. 302, 311 (1985) ("Our concepts of causation for failure to act are generally expressed in terms of whether the conduct may be viewed as a 'substantial factor contributing to the loss.'") (quoting Francis v. United Jersey Bank, 87 N.J. 15, 44 (1981)). Without a countervailing expert

11

report that the DNR order caused damages, plaintiff cannot prove malpractice against defendants.

Plaintiff relies on Payne v. Marion General Hospital, 549 N.E.2d 1043 (Ind. Ct. App. 1990). In Payne, the Indiana court concluded it was an issue of fact for the jury to determine whether plaintiff was damaged by the doctor's entry of a no-code order without plaintiff's informed consent. 549 N.E.2d at 1050. This case is not like Payne; it does not involve informed consent. The jury in Payne could have determined that decedent was not terminally ill and sustained some damage from the lack of informed consent. Here, there was no testimony or evidence provided by plaintiff that resuscitation efforts would have been successful, and plaintiff did not rebut Weine's testimony.

The claims against Riverview Medical were based on respondeat superior. However, there was no information that Dr. Jurewicz was an employee of Riverview Medical. Even if respondeat superior applied, Riverview Medical is not negligent if the malpractice case against Dr. Jurewicz cannot be sustained. See Carter v. Reynolds, 345 N.J. Super. 67, 71 (App. Div. 2001) (providing that "under the doctrine of respondeat superior, an employer is vicariously liable for

12

the torts of an employee only if the employee was acting within the scope of his or her employment at the time the tort was committed").[3]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] To the extent plaintiff's complaint may raise other legal issues, these were not argued in the appeal and are waived. Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014); Drinker Biddle & Reath LLP v. N.J. Dep't of Law & Pub. Safety, Div. of Law, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (noting that claims not addressed in merits brief are deemed abandoned); see Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2020).

A-0516-18T1